CORNELIUS ELSTON v. MARTHA J. CHAMBERLAIN *et al.*

1. CONVEYANCE, *When Not a Mortgage.* A conveyance of land in satisfaction of a judgment, though accompanied by a verbal agreement that if the grantor makes a sale of the land within five or six months, the land should be reconveyed to him, is not a mortgage.

2. DEED — *Consideration* — *Satisfaction of Judgment.* Where a grantor executes a conveyance of real estate to the clerk of the district court as his friend, or agent, with the understanding that if the clerk shall obtain from the plaintiff satisfaction of a judgment rendered in that court against the grantor, then that the deed shall be recorded and the land belong to the plaintiff, and subsequently the plaintiff, at the instance of the clerk of the court, accepts the deed and delivers to the clerk a written satisfaction of the judgment and pays the costs thereof, and also the taxes on the land, *held*, that the land belongs to the plaintiff, notwithstanding the clerk fails to file or record the satisfaction of the judgment and the deed.

3. DEED, *Not a Mortgage.* The evidence in this case examined, and *held*, that the quitclaim deed executed by the grantor was not intended to operate as a mortgage, and therefore the grantor is not entitled to redeem.

*Error from Bourbon District Court.*

CORNELIUS ELSTON brought this action against *Martha J. Chamberlain,* Harriet W. Chamberlain, and Ira D. Bronson, asking that Harriet W. Chamberlain, claiming to be the owner of the northeast quarter of section 32, in township 26, in range 25, Bourbon county, be declared a mortgagee only; that the defendants be charged with the rents and profits of the premises, and he be permitted to redeem. With consent of the parties, the case was heard upon written evidence only before a judge *pro tem.*, who made and filed the following special findings of fact:

"In the year 1875 the plaintiff executed his certain mortgage upon the northeast quarter of section number thirty-two, township number twenty-six, range number twenty-five, Bourbon county, state of Kansas, to secure the sum of $500, then loaned to him by Hilborn Darlington; and Elston having made default in the mortgage, it was foreclosed in this court, at the May term, 1879, the amount of the judgment of fore-

closure being $602.50, with six months' stay of execution under the statute. On or about the time of the expiration of said stay, Elston proposed to Ira D. Bronson, who, to the knowledge of Elston, was the agent of Hilborn Darlington for the collection of the mortgage, and who also at that time was clerk of this court, that, fearing the land, if sold at sheriff's sale, would not sell for enough to pay the debt because of the extreme depreciation of the values of real estate in this section, he would deed the land over to Hilborn Darlington if he would accept the same in satisfaction of the judgment and costs. Bronson said he would recommend that this be done. Elston then proposed, in place of making the deed direct to Hilborn Darlington, that he would prefer to make the deed to Bronson, and upon the parol understanding that in the event of the acceptance of the proposition by Darlington the said Bronson would convey to Darlington. Thereupon, on the 22d day of November, 1879, Elston and his wife executed and delivered a quitclaim deed to Bronson for the land. Bronson, within a reasonable time thereafter, notified Hilborn Darlington of the proposition, which was accepted by him, and on the 1st day of December, 1879, Darlington executed a satisfaction of the foreclosure judgment and sent the same to Bronson, who through some oversight failed to file it in court as clerk, and also failed to enter a formal satisfaction of the judgment. Sometime thereafter, in the spring of 1880, Bronson informed Elston that the proposition had been accepted by Darlington, and thereupon Elston moved off the said land and delivered it to Bronson as Darlington's agent.

"Afterward, upon the 10th day of December, 1880, Darlington sold and conveyed by quitclaim deed the land to Martha J. Chamberlain, and by oversight failed to state any consideration in the deed. On the 1st day of May, 1880, Bronson and wife, pursuant to the arrangement with Elston, executed and delivered a quitclaim deed for the land to Hilborn Darlington. Afterward, upon the 5th day of February, 1881, Darlington made a second quitclaim deed to Martha J. Chamberlain for the express consideration of $1,000, this being made by reason of the fact that no consideration was recited in the said former deed. Afterward, upon the 6th day of September, 1881, Martha J. Chamberlain executed and delivered a quitclaim deed for the land to her mother, Harriet W. Chamberlain. Bronson failed to record the quitclaim deed executed to him by Elston, and until about the date of the institution of this suit he appears to have lost trace of it,

but then discovered it, together with the satisfaction of judgment offered in evidence, and at the request of plaintiff said deed has not yet been recorded. Martha J. Chamberlain paid an actual consideration of $800 to Hilborn Darlington for this land, and had no knowledge whatever of the circumstances under which Darlington acquired his title. Harriet W. Chamberlain paid Martha J. an actual consideration of $1,150, and had no knowledge of the said circumstances under which Darlington acquired his title.

"Since the bringing of this action Hilborn Darlington has died, and the defendant, including Hilborn Darlington before his death, and immediately upon the bringing of this action, offered and have ever since offered to enter formal satisfaction of the judgment of foreclosure, which plaintiff herein has refused to accept. Said agreement in settlement was fully complied with by Hilborn Darlington, and the costs of the foreclosure paid; the costs being paid by him on or about May 1st, 1880, and since then no further proceedings whatever have been taken in said foreclosure case, nor has anything been done with reference thereto until this action was begun."

As a conclusion of law upon the findings of fact, the court found the issues in favor of the defendants, and rendered judgment accordingly. *Elston* excepted, and brings the case here.

*Ware, Biddle & Cory*, for plaintiff in error.

*J. D. McCleverty*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: In this action, brought in the court below to permit Cornelius Elston to redeem the northeast quarter of section 32, in township 26, range 25, in Bourbon county, formerly his homestead, and to have an accounting with the parties who have been in the possession thereof, it is claimed on the part of the plaintiff that the quitclaim deed executed by him and his wife on the 22d day of November, 1879, must be declared a mortgage only; that the deed was delivered under a verbal arrangement between Elston and Bronson that Elston was to have five or six months in which to sell the land to pay

off the judgment, and in any event that he was to have the right to sell and redeem the land until the judgment was satisfied and the deed recorded. It is then urged that as the judgment was never actually satisfied of record and the deed never recorded, Elston has the right to redeem and call for an accounting, there being no intervening rights of innocent purchasers.

Elston testified with reference to the conveyence of 22d of November, 1879, that C. O. French was Darlington's attorney when the judgment of foreclosure was rendered; that he told Mr. French if he would wait on him until the time to give a deed, he would make it; that Mr. French said he would wait; that when the time came for making the deed he went to Mr. French; that French directed him to Bronson, and said that whatever arrangement could be made with Bronson would be satisfactory to him; that Bronson was the clerk of the district court of Bourbon county at the time, and had been for years; that he supposed Bronson was the man to receive the money when it was paid in, as the clerk of the court; that Bronson did not say anything about being the agent of Darlington; that he did not know he was Darlington's agent, but supposed he was dealing with him as clerk of the district court; that Bronson took the deed in his own name, agreeing at the time that he (Elston) should have until the judgment was satisfied of record and the deed recorded to dispose of the land and pay the judgment; that in the spring of 1880 Bronson told him the matters had all been fixed up, and then he gave up and moved off the land; that in the winter of 1883 or 1884 he discovered the judgment in the foreclosure case was not satisfied, and immediately brought this suit to redeem.

Bronson testified that he did business for Hilborn Darlington through Smedley Darlington, of West Chester, Pennsylvania; that at the time of the execution of the quitclaim deed from Elston to him, and for several years prior, he had been the agent of Smedley Darlington; that the mortgage and note given by Elston to Hilborn Darlington were received by him for collection in the early part of the year 1879; that soon

after, he notified Elston through the mail that the note and mortgage were in his hands for collection; that after he failed to pay, he caused the mortgage to be foreclosed; that in the judgment for foreclosure, there was a stay of the order of sale for six months; that about the end of the stay, Elston came to his office and said he was unable to pay the judgment; that he was afraid, if the order of sale was issued, the land would not bring enough at sale to satisfy the judgment; that he did not like to have a part of the judgment remaining against him; that he was willing to deed the land, if Darlington would release him from any further payment; that he (Bronson) said to him that all Darlington wanted was the principal, interest, and costs; that if he could get that, he was willing to take the land; that he believed that if Elston and his wife would make a deed of the land to Darlington, he could get a satisfaction of the judgment; that Elston said he was willing to do this, and proposed to make the deed at once; that he commenced to write the deed, when Elston suggested he did not know Darlington personally, and would rather make the deed to him, if he would agree to get a satisfaction of the judgment; that he told Elston if he would rather make the deed to him, he would give his personal agreement to obtain the satisfaction of the judgment before he would place the deed on record, and that he would look to Darlington for the costs; that Elston consented to this; that he (Bronson) wrote the deed accordingly; that Elston, after causing it to be acknowledged, delivered it to him as a deed to convey a full, legal and equitable title to the land; that the only arrangement between Elston and himself about the delivery of the deed was this: that as soon as he (Bronson) got in his hands the satisfaction of the judgment from Darlington, the escrow was to cease, and the deed was to be absolute; that after that he should have full right to convey the real estate to Darlington, or whomsoever he might direct; that nothing was said about placing the satisfaction on record, or that the land should not be transferred until the satisfaction of the judgment was of record; that no agreement was made that

Elston should have the right to sell or redeem the land up to the time the satisfaction was put on record; that it was expressly understood the deed was to take immediate effect whenever he (Bronson) should receive the satisfaction of the judgment from Darlington. The question was asked of Bronson, "whether anything was said to Elston about his having an opportunity to find a purchaser for the land?" To this Bronson answered, "that before Elston left the office he remarked he thought the land was worth more than the judgment, and would like to have the privilege of redeeming it if he could do so;" that he told him all Darlington wanted was the principal, interest, and costs; that while he had no authority to say so from Darlington, yet he believed Darlington would permit him to redeem the land at any time while he owned it, upon full payment of principal, interest, and costs; that if Elston found a purchaser before Darlington sold the land, he would write to Darlington concerning it, and he had no doubt but that Darlington would let him do so; that Elston never at any time applied to him, before the commencement of this suit, to redeem the land; that upon receipt of the deed, he wrote the following satisfaction of the judgment:

"*In the District Court of Bourbon County, Sixth Judicial District of the State of Kansas.*— HILBORN DARLINGTON, Plaintiff, *v.* CORNELIUS ELSTON *et al.*, Defendants.—I, Hilborn Darlington, the plaintiff in the above-entitled action, do hereby acknowledge that I have received full payment of the judgment rendered in said action; the said payment being a quitclaim deed from the above-named defendants for the land upon which the mortgage was foreclosed in said action; the said deed running to Ira D. Bronson, and a quitclaim deed from said Bronson to me. And I hereby authorize the clerk of said court to enter satisfaction of said judgment on the records of said court, the said conveyance and deed being made at the request of the said defendants in order to save further costs of sale of land."

This he sent by mail to Darlington to sign, and informed him of the agreement he had made with Elston; that by due course of mail he received a letter from Darlington informing him he had consented to the agreement; that afterward he in-

formed Elston that he had received such a letter from Darling-
ton, and asked for an order to his tenant on the land to deliver
possession thereof to Darlington; that Elston gave him a
written order to the tenant directing him to surrender posses-
sion; that under the order he received possession of the land
for Darlington; that he received the satisfaction of judgment
above referred to signed by Darlington about March 25, 1880;
that he immediately placed the written satisfaction of the
mortgage in one of the pigeon-holes of the desk of the clerk's
office, but through neglect did not mark it filed with the pa-
pers of the office; that when he vacated the office of the clerk
of the court, in removing from the office his private papers
he carelessly gathered up this satisfaction of the mortgage
with other papers, which were in pigeon-holes in his desk, and
took it to his residence; that he also mislaid the deed given
by Elston, but after the commencement of this suit he found
among his papers both the satisfaction of the mortgage and
the deed.

The testimony of Mr. French is corroborative of some of
the statements of Bronson. He said among other things that
after the mortgage came into his hands for foreclosure, he
had conversations at different times with Elston in regard to
delaying legal proceedings so as to give him an opportunity
to sell the land and pay the mortgage debt; that he knew
he made efforts to sell the land; that he offered the land
at about $800, but could not find a purchaser; that after this
the mortgage was foreclosed; that after the judgment had been
rendered he tried to assist Elston to find a purchaser for the
land at a sufficient price above the judgment and costs to leave
him $100; that he could not find a purchaser; that Elston
told him at different times if he could not sell the land for
sufficient to pay the judgment and costs he would deed it to
Darlington to pay the judgment, as he was afraid if the prop-
erty was sold at sheriff's sale it would not bring the judgment,
and he did not want a judgment hanging over him for the bal-
ance; and that Elston knew Bronson was Darlington's agent
in regard to the mortgage and the land.

The fact that Elston in the spring of 1880 moved off the land and turned it over to Bronson justifies the conclusion that he supposed his interest in the land was gone. If the testimony of Bronson with reference to the quitclaim deed to him from Elston be accepted as truthful, then the judgment of the trial court must be sustained. Upon this testimony Elston has no right to redeem. He executed the deed to Bronson so as to obtain the satisfaction of the judgment in the foreclosure case. The satisfaction of the judgment, reciting the quitclaim deed from Elston to Bronson, and the quitclaim deed from Bronson to Darlington, duly signed and acknowledged, were returned to Bronson. In March, 1880, Elston was notified the judgment was satisfied, and thereon he moved off and gave up the land.

Elston appeals to a court of equity to permit him to redeem, because the satisfaction of the judgment delivered to Bronson was not filed or put on record. In equity, that is considered as done which the parties have agreed to do and which they ought to have done; therefore, as Darlington accepted the proposition of Elston, delivered a written satisfaction of the judgment in the foreclosure suit to Bronson to be filed, and as the defendants have always been willing to satisfy the judgment, we may consider the judgment satisfied, and the defendants ought to be permitted to file the satisfaction. It may be said that Elston surrendered his interest in the land at a price manifestly inadequate. There is nothing in the policy of the law which forbids him to execute the quitclaim deed to Bronson upon terms satisfactory to himself. Of course such a transaction will be closely scrutinized. At the time the loan was made, and also at the time of the institution of this action, the land was worth from two to three thousand dollars, but in the fall of 1879, although assisted by the attorney of Darlington, no sale of the land could be effected for $800. Elston in his own testimony stated he told Mr. French if he would wait on him until the stay expired, he would make a deed, and also stated he went to Mr. French to make the deed, and French sent him to Bronson. There is no evidence

showing or tending to show that the written satisfaction of the judgment executed by Darlington, or the quitclaim deed executed by Elston, was fraudulently or purposely withheld from the record.   These things seem to have occurred through the negligence or oversight of Bronson, not from any desire to do wrong.   Darlington had already had his mortgage against the land foreclosed, and clearly he did not understand he was accepting the quitclaim deed as another mortgage, or that any debt, after that acceptance, existed between him and Elston.   Bronson, upon receiving notification from Darlington that he would accept the quitclaim deed in satifaction of the judgment, and upon receiving the written satisfaction above referred to, understood the debt from Elston to Darlington was extinguished; and when Elston was notified of the satisfaction of the judgment and gave up the land, he also must have understood that Darlington had no other or further claim against him, either by judgment or mortgage.   It is nowhere shown by the testimony that either Darlington or his agents French and Bronson were anxious to procure the quitclaim deed.   All that Darlington wanted, or his agents wanted, was the judgment, interest, and costs.   According to all the testimony, Elston could not sell his land for sufficient money to pay the judgment, and therefore was anxious for Darlington to take a conveyance of the land and extinguish the debt.

After Darlington executed and sent to Bronson the written satisfaction of the judgment, he paid, on account of the conveyance from Elston to Bronson, and from Bronson to him, $148.70 as costs in the foreclosure suit and as taxes upon the land.   Although Bronson was the agent of Darlington, yet he was also the clerk of the district court of Bourbon county, and if Darlington returned to him the written satisfaction of the judgment as district clerk, the deposit with him of that instrument was itself a satisfaction of the judgment.   If, however, full credence be given to the testimony of Elston, then he consulted Bronson as the clerk of the court and as his friend or agent.   He executed the deed to Bronson with the

understanding that Bronson would obtain a satisfaction of the judgment, put the deed on record, and then that the land should belong to Darlington, with the parol agreement that until that time he was to have the right to sell the land. Now if in this arrangement Bronson was not the agent of Darlington, then when Darlington accepted from Bronson the quitclaim deed and delivered to him the written satisfaction of the judgment and paid all the costs of the judgment, together with the taxes on the land, the land belonged to Darlington, even if Bronson, as the friend or agent of Elston, had violated instructions. Elston insists that he consulted Bronson not as the agent of Darlington, and if he was not the agent of Darlington in accepting the deed and obtaining the satisfaction of the judgment, then of course he acted for Elston and Elston is bound thereby.

2. Deed—consideration—satisfaction of judgment.

Again, if it was the understanding between Elston and Bronson that the quitclaim deed of the 22d day of November, 1879, was executed to satisfy the judgment of foreclosure if Darlington would accept the same in payment thereof, and thereafter Darlington did accept the quitclaim deed, and delivered to Bronson, the clerk of the court, the written satisfaction of the judgment, even if there was a verbal agreement between all of the parties that Elston might have a reconveyance of the land if he effected a sale within five or six months, this would not render the quitclaim deed from Elston to Bronson a mortgage, or compel a court of equity to permit Elston to redeem. He was not compelled by any agreement to repurchase, and the rights of this alleged verbal understanding were not reciprocal. (*McNamara v. Culver*, 22 Kas. 661; *Eckert v. McBee*, 27 id. 232.)

1. Conveyance, when not a mortgage.

Darlington did not convey the land to Martha J. Chamberlain until December 10, 1880. This conveyance was filed for record January 17, 1881. The deed from Bronson and wife to Darlington was recorded January 29, 1881. The deed from Martha J. Chamberlain to Harriet W. Chamberlain was recorded October 2, 1882. After these deeds were recorded,

Elston executed, at the instance of Bronson, a second deed, but his wife refused to sign this deed, and soon after this action was commenced. At the time that Bronson asked him to make a new deed, Elston said "that he had no right to make another deed." Therefore, in whatever view we consider the testimony, we are driven to the conclusion that after Darlington accepted the quitclaim deed and delivered to Bronson the written satisfaction of the judgment and paid all the costs thereof, no debt or claim existed in his favor against Elston, and therefore that the quitclaim deed of Elston to Bronson cannot be regarded as a mortgage.

3. Deed, not a mortgage.

The judgment of the district court will be affirmed.

All the Justices concurring.