No. 33,563

CHARLES R. BELL, *Appellee,* v. THE BANK OF WHITEWATER and FRANK L. GRONAU, *Appellants.*

(73 P. 2d 1059)

Opinion filed December 11, 1937.

*J. B. McKay,* of El Dorado, for the appellants.

*O. A. Keach,* of Wichita, and *E. W. Grant,* of El Dorado, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Defendants appeal from an order overruling their demurrers to plaintiff's second amended petition.

Plaintiff filed his original petition on July 26, 1935, setting up, in part, about the same state of facts as is hereafter detailed. Defendant's motion to strike and to make more definite and certain was in part sustained. Plaintiff thereupon filed an amended petition, covering about the same matters contained in his first petition, less certain matters ordered stricken out, and in part complying with the order to make more definite and certain. To this amended

petition defendants filed a motion to strike the amended petition, because of planitiff's failure to comply with the ruling on the first motion, or in the alternative, to strike certain parts and to compel plaintiff to comply with the previous order of the court. The court denied the first part of this motion, allowed it in the alternative, and gave plaintiff time to file a second amended petition. Without making a detailed statement, the purpose of defendants' motions was to require plaintiff to state definitely and certainly the discoveries of fraud he made subsequent to March 1, 1935, in what respects the chattel-mortgage sale was not actual and bona fide, and what articles he claimed were not covered by the chattel mortgage, and were sold.

The second amended petition contains two causes of action. In the first cause of action the status of the parties is set forth. It is alleged that plaintiff was owner of a garage at Whitewater, Kan., and in the operation thereof he had to borrow money, and became a customer of defendant bank; that on May 8, 1929, he borrowed $2,-500, giving promissory notes secured by a chattel mortgage, copy of which was attached as an exhibit. Reference thereto shows plaintiff indebted in the sum of $2,500, to be paid $500 in six months, $500 in twelve months, etc., at six months' intervals. The property mortgaged consisted of furniture and fixtures, parts and accessories, shop equipment and used cars, which was to remain in plaintiff's possession until default in payment of debt, but in case mortgagee deem himself insecure he might take property into his possession. Provisions for sale need not be detailed, for they were in common form. It is further alleged the bank suggested to plaintiff he sell a fourth interest to defendant Gronau, and arranged for a meeting on June 19, 1929, at which the sale was arranged for $1,500; that it was agreed the bank would take Gronau's note for $1,500 and apply same on plaintiff's notes for $2,500 secured by the chattel mortgage; that the $1,500 note was given by Gronau and accepted by the bank, and plaintiff, relying on the agreements, supposed his note had been credited; that through connivance and conspiring together of the bank and Gronau and for the purpose of fraudulently preventing plaintiff from receiving what was rightfully his the bank failed to credit his debt with $1,500, all of which was known to Gronau and participated in by him for the purpose of defrauding plaintiff, and that plaintiff had no knowledge of the fraud which was planned and perpetrated for the purpose of depriving him of the $1,500 and did not discover it until after March 1, 1935.

It is further alleged that in the month of August, 1929, plaintiff left Whitewater and left Gronau in charge of the business; that shortly after his departure, and in furtherance of the plan to defraud plaintiff, Gronau, acting in conspiracy and concert with the bank for that purpose, surrendered possession of the mortgaged chattels to the bank upon the *pretended* claim by the bank it was entitled thereto under the chattel mortgage, although not a note therein described had become due; that on September 16, 1929, the bank sold the mortgaged chattels for the *purported* satisfaction of the debt and Gronau became the *purported* purchaser thereof; that the bank, instead of retaining only $1,000, which was the amount owing by plaintiff if his note had been credited with $1,500 as agreed, *"fraudulently sold* more of said mortgaged chattels than was necessary" to produce the amount of principal unpaid, and retained the full amount of $2,-500, with full knowledge of Gronau of the purpose thereof and his participation therein, and that the *pretended* chattel-mortgage sale was illegal and fraudulent for those reasons, including the fact that as a part of the conspiracy the bank retained Gronau's note for $1,-500 without crediting plaintiff's indebtedness; that the plan was devised and executed through joint action of the bank and Gronau for the fraudulent purpose of enabling Gronau to secure the mortgaged chattels for less than their real value, etc.—

"and all of this was for the fraudulent purpose as aforesaid of depriving this plaintiff of his interest in said chattels covered by said mortgage without compensation to him."

Then follows another allegation that plaintiff did not discover the fraud perpetrated on him until after March 1, 1935. It is further alleged that by reason of the premises the bank holds the obligation owing by Gronau in trust for the plaintiff; that by the connivance and conspiring of the bank and Gronau, the money has become a part of the assets of the bank, although belonging to plaintiff. The prayer was for $1,500 and interest.

The second cause of action incorporates the first as part thereof and alleges that when Gronau delivered possession of the mortgaged chattels to the bank, he also delivered all other assets of the garage, of which he was unable to give an itemized list, to the bank, which sold them, as well as those described in the chattel mortgage, to Gronau, the *purported* purchaser, for the alleged sum of $5,906.97, which *purported* sale price was *grossly* inadequate and *very much less* than the actual value, the *actual value* of which was not known

to the plaintiff, who was not present at the sale, but which was well known to defendants; that all of the acts of Gronau and the bank were planned and carried out for the fraudulent purpose of transferring plaintiff's interest to Gronau without paying plaintiff therefor, and that the value of the interest thus transferred was $2,-000. Then follows an allegation plaintiff had no knowledge of the acts of fraud in either cause of action until after March 1, 1935.

Defendants demurred to this second amended petition on the ground of improper joinder of causes of action, and on the ground of failure to state facts sufficient to constitute a cause of action.

Appellants direct our attention to the rule that where a petition has been attacked by motions to strike, to make definite and certain, etc., the allegations will not be liberally construed in favor of the pleader, and where, as the result of procuring rulings favorable to himself, the pleader defeats every effort of his opponent to ascertain on what theory he founds his cause of action, and if the petition is not drawn on a single and definite theory, or there is such confusion of theories it cannot be determined on which the pleader relies, the petition is not sufficient and a demurrer thereto should be sustained. (*Sluss v. Brown Crummer Inv. Co.*, 137 Kan. 847, 22 P. 2d 965.) In that connection, they argue that at times appellee has contended that both of his causes of action are for relief on the ground of fraud, and at other times that his first cause of action establishes a trust fund which he is entitled to recover, and the second is for relief on the ground of fraud, and that although their various motions have been directed to the petition and in part sustained and in part overruled, they cannot now determine the theory of the first cause of action. We do not find it necessary to determine whether the above rule applies fully under the circumstances.

The essential question presented is whether, as to either cause of action, and on whatever theory may be advanced, the allegations show the cause of action barred by the statute of limitations.

Although the first cause of action is studded with the words "fraud," "fraudulent," "fraudulently" and "defraud," and although there are two allegations plaintiff had no knowledge he had been defrauded until after March 1, 1935, all of which would lead to the conclusion the pleader was seeking relief on the ground of fraud, he insists he is seeking to recover the $1,500 proceeds of the Gronau note which should have been applied on his debt of $2,500 to the bank, and which proceeds he claims the bank holds as a trust fund

for him. Admitting, for the purpose of discussion, that that is the theory of the first cause of action, are facts sufficient to constitute a cause of action pleaded, or if so, do they show such an action barred by the statute of limitations? Stripped of nonessentials, all that is pleaded is that on June 19, 1929, the bank agreed to take Gronau's note for $1,500 and apply the proceeds thereof on plaintiff's mortgage debt of $2,500; that the bank took the note but failed to make the credit; that the bank later sold the property mortgaged to secure plaintiff's note and retained the full amount of $2,500 and retained the Gronau note without crediting it on plaintiff's indebtedness.

In support of his contention that the agreement of the bank to take Gronau's note for $1,500 and apply the proceeds on appellee's $2,500 indebtedness created a trust relation in his favor, appellee directs our attention to *Peak v. Ellicott, Assignee*, 30 Kan. 156, 1 Pac. 499, and *Hepler State Bank v. Cox*, 133 Kan. 753, 3 P. 2d 468. Passing by the question whether the bank, in dealing for itself, could in the same transaction be the agent of appellee and deal with itself, we shall assume that the transaction resulted in a trust in favor of appellee. Is it still enforceable? In this connection, we do not consider the appellee's allegation he was absent from Whitewater, for that would not toll the statute of limitations. To prove the trust relation required no proof of the alleged conspiracy between the bank and Gronau or the subsequent acts of fraud charged to them. The legal relation between appellee and the bank is no different than it would have been had the situation been only that the bank failed to perform according to its agreement with appellee and to credit the proceeds of the Gronau note on appellee's indebtedness. Any fraud that inhered in the transaction tolled the statute of limitations only until appellee discovered the fraud. The second amended petition alleges a chattel-mortgage sale and that it was illegal and fraudulent, but there is no allegation that it was not publicly and regularly held, or that it was in any manner concealed; the charge is that it was illegally and fraudulently held because a result of the claimed fraud. Under these allegations, there is nothing that tends to show that appellee did not have legal notice his mortgaged property would be sold in satisfaction of his debt, whether it was $2,500 or only $1,000. Nor is there anything alleged, or to be inferred from what is alleged, that prevented appellee at any time after the sale was held from demanding of the bank the $1,500 appellee claimed was due him or

that prevented his bringing suit to recover if the demand were refused. Appellee argues, however, that a trust relation having been established, the statute of limitations did not run because he did not learn of what he alleges transpired. However, the allegations of his petition are that even though a trust relation was created when the Gronau note was given and taken by the bank, it was breached and repudiated when the bank sold the mortgaged property and credited the proceeds on appellee's debt without giving credit for the Gronau note.

While it is generally true that direct, technical and continuing trusts not cognizable at law are not affected by and subject to the operation of statutes of limitations, it is generally held that wherever there is a concurrent remedy at law, the statute of limitations will be applied and will run from the time the cause of action first accrues. (37 C. J. 906, 913; 17 R. C. L. 794; 1 Wood on Limitations [4th ed.], 260, 272, 277; 4 Bogert on Trusts, 2753, 2766; Kelly, Code Statute of Limitations, p. 54, § 49.) Assuming, as we have, that a trust relation was created, it appears that appellee always had a remedy at law; that the trust was almost immediately repudiated by sale of the property to pay the indebtedness against which it is claimed the trust fund should have been applied, and that there was no concealment of the repudiation.

Giving full consideration to the allegations as to fraud, it may be said that a trust arose, not express but involuntary or constructive, one created where, through fraud, one gives his property to another without intention to create a trust relation. Nevertheless, a trust relation will be raised for protection of the giver and against the constructive trustee. In such an event, the action to declare the trust and for relief would be an action for relief on the ground of fraud and would be barred in two years after discovery of the fraud. (See *Kahm v. Klaus*, 64 Kan. 24, 67 Pac. 542.)

It may also be observed that contrary to appellee's contention that he sued to establish and recover the trust fund, a reading of the petition discloses that what is alleged is more properly to be called an action for money had and received, and that plaintiff seeks to avoid the bar of the statute of limitations by charging fraud which he discovered within two years immediately prior to his commencing action. As appellee expressly denies that was his theory, we shall not discuss it further than to say the chain of facts alleged shows there was no concealment, and that if appellee did not know what

occurred, it was not because of lack of opportunity. He is charged with knowing what was openly done. As bearing on the matters last discussed, see *Perry v. Smith*, 31 Kan. 423, 2 Pac. 784 and *Parr v. Van Petten*, 71 Kan. 864, 81 Pac. 1132. It must be held that under any subdivision of G. S. 1935, 60-306, the cause of action is barred.

In the second cause of action appellee seeks to recover for property not included in the chattel mortgage but sold at the chattel-mortgage foreclosure sale. We have some difficulty in determining whether appellee is seeking to recover for conversion, or whether he is seeking relief on the ground of fraud. If the action is for conversion, it is barred by G. S. 1935, 60-306, *third*. If it is for relief on the ground of fraud, for reasons given in discussing the first cause of action, it is barred by the same statute.

Our conclusion makes it unnecessary to rule on appellant's motion as to costs.

The judgment of the trial court is reversed and the cause remanded with instructions to sustain the demurrer.