MARY E. KERR, *Appellee*, v. MYRTLE ROBERTSON, *Appellant*,

and

No. 39,457

MARY E. KERR, *Appellee*, v. PAUL ROBERTSON, *Appellant*.

(272 P. 2d 1062)

 Opinion filed July 6, 1954.

*John F. O'Brien,* of Independence, argued the cause, and *O. L. O'Brien,* of Independence, was with him on the briefs for the appellants.

*Jay W. Scovel,* of Independence, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action to vacate, cancel and set aside two quitclaim deeds executed by plaintiff in which the defendants Myrtle Robertson and her husband Paul Robertson appeared as grantees, and for judgment directing defendants to make, execute and deliver to plaintiff a sufficient conveyance divesting defendants of any right, title or interest in the real estate described therein and in the event of failure to do so, the judgment and decree of the court shall stand as such conveyance. The defendants filed separate demurrers to plaintiff's second amended petition. These were overruled, and they have filed separate appeals. These appeals raised the same legal questions and may be disposed of in one opinion.

In view of the questions presented for our determination plaintiff's petition filed August 26, 1953, and amendments thereto, may

be summarized briefly as follows: It is alleged in the petition that the parties to this action all reside in Independence, Montgomery county, Kansas, and their respective addresses are given; that when the defendant Myrtle Robertson was a child eight years of age plaintiff and her husband, William P. Kerr, took Myrtle into their home and raised, educated and provided for her as though she were their own child; that plaintiff and her husband at all times entertained an affection toward Myrtle to the same extent as if she were their own child and that Myrtle appeared always to have the same affection for plaintiff and her husband as though she were their own child; that plaintiff's husband died June 21, 1949; that prior to his death he had to a very great extent assumed the responsibility of looking after plaintiff's property. It appears from the petition that plaintiff was the owner of a substantial amount of real property including farm land and property in the city of Independence. That soon after the death of her husband Myrtle Robertson began urging plaintiff to place her property in the name of the defendants Myrtle Robertson and her husband Paul Robertson for the convenience of managing and looking after plaintiff's property. The matter was discussed frequently; plaintiff hesitated to do so but Myrtle Robertson represented that she desired to take no advantage of plaintiff but thought that looking after the property was too much for plaintiff to undertake to do and that if the property was deeded to her she would reconvey it to plaintiff at any time plaintiff wanted it. At several of these conversations defendant Paul Robertson was present and joined in the statement that if it was transferred to defendants it would be reconveyed, and said, ". . . any time she wanted it back they would turn it back; that it was hers and I want her to have whatever she wants." The three parties finally consulted Mr. Kirke C. Veeder, a reputable attorney, where the matter was fully discussed. By that time plaintiff was 75 years of age. As a result of the discussion an agreement was reached by the parties as herein stated and on August 7, 1951, plaintiff executed a quitclaim deed naming the defendants as grantees as joint tenants with the right of survivorship describing real property said to be of the value of about $50,000 and expressly reserving for the plaintiff the use and possession of the property and all rents and income therefrom during the grantor's entire life. This deed was filed of record August 7, 1951. Under similar circumstances and agreements plaintiff exe-

cuted a similar deed to defendants on October 23, 1951, covering other real property consisting of farm land and real estate in the city of Independence, Montgomery county, of the value in excess of $50,000. This deed was filed of record on October 27, 1951.

It is further alleged that defendants did take over the management of the property described in the deeds and that everything went along as agreed for several months when the defendants began to show indifference toward plaintiff which attitude increased and became so arbitrary, dictatorial and unpleasant that plaintiff made an oral request to the defendant Myrtle Robertson that the property be reconveyed to her. Plaintiff does not recall the exact date of this request. About April 1, 1953, Mr. Veeder, at the request of plaintiff, took the matter up with defendants by telephone and told them that plaintiff desired to have the property reconveyed and requested them to come to his office to discuss the matter; that defendants failed to make a reconveyance through the efforts of Mr. Veeder and plaintiff employed her present attorney, an independent counsel, to make a formal demand for the reconveyance of the property; that formal demand was made in a letter written by plaintiff's present attorney addressed to Mrs. Paul Robertson and dated August 18, 1953, which enclosed a quitclaim deed covering all the property in the two quitclaim deeds executed by plaintiff asking that both of the defendants execute the deed and return it to him by August 24, 1953, or a suit to set aside the deeds executed by plaintiff would be filed. This letter was sent by registered mail with return receipt requested. Defendants paid no attention to the letter and an action was promptly brought. Defendants filed several motions to strike, to separately state and number and to have the petition made more definite and certain. Some of these were sustained and others overruled with the result that plaintiff filed her second amended petition in two counts; defendants separately demurred to each of the counts; these demurrers were overruled, and the appeals followed.

In this court the appellants state as the sole question involved the following:

"In an action for the cancellation of a deed based on alleged fraudulent misrepresentations of the defendants must plaintiff's petition, in order to state a cause of action, specifically allege that the alleged fraud was not discovered by plaintiff until within two years prior to the commencement of the action?"

It is well settled that the statute of limitations is an affirmative defense and normally it must be pleaded by defendant. See, *Mag-*

*nolia Petroleum Co. v. Moyle,* 162 Kan. 133, 175 P. 2d 133, and cases there cited.

It may be raised by demurrer to the petition if the petition clearly shows that the action is barred. See, *Kansas State Bank v. Shaible,* 118 Kan. 73, 234 Pac. 40, and cases there cited.

The demurrer should be overruled if the petition does not clearly show the action to be barred. Citing, *Christie v. Scott,* 77 Kan. 257, 94 Pac. 214.

Construing this petition to be predicated upon fraudulent promises made by defendants prior to the execution of the deeds to the effect that they would reconvey the property described therein at any time the grantor desired to have it reconveyed to her it is clear from the facts alleged in the petition that the plaintiff did not discover that representations made before the deeds were executed were fraudulent until sometime early in the year of 1953 when she first asked Myrtle Robertson to reconvey and the parties talked it over with Mr. Veeder in April of 1953. The fact the letter written to defendant by plaintiff's counsel·on August 18, 1953, in which he enclosed a deed for the execution of defendants and which they declined to execute might be regarded as the time when defendants made an express refusal to comply with their promise.

While there are some cases in which this court has said the specific time when the fraud was discovered should have been stated in the petition, the real rule, however, is that the facts should be stated in the petition sufficient to show that the fraud was discovered within two years. Certainly we think that rule is applicable here.

We have examined all of the authorities cited by counsel but think it unnecessary to restate them here and analyze each of them. Certainly it is clear in this case that defendants' refusal to convey as originally agreed upon was not discovered until within two years of the filing of the petition in this case. The judgment of the trial court is affirmed.

WEDELL, J. (concurring): I concur in the result and particularly in the statement that sufficient facts should be stated in the petition to show that the fraud was discovered within two years prior to filing the action.

It has never been my view that in order to toll the two year fraud statute it is necessary to allege in express terms the fraud was not discovered until within two years prior to the *commencement* of the

action, where the facts pleaded sufficiently disclose that was true. Nor has it ever been my opinion that a petition must state the "specific time" the fraud was discovered. Obviously such a rigid requirement would be wholly unworkable. In many cases it is utterly impossible to allege such an exact time. The discovery might well be the result of a number, or combination, of facts and circumstances which initially merely aroused suspicion but which later crystallized into knowledge.

In the instant case the petition plainly alleged the facts indicating both how and when the fraud was discovered within the last two years. That is sufficient. That is precisely what, on numerous occasions, I have urged should be required instead of permitting a pleader, after long years had elapsed, merely to allege that he did not discover the fraud until within two years before he brought the action. See *Malone v. Young,* 148 Kan. 250, 264, 81 P. 2d 23; *Preston v. Shields,* 159 Kan. 575, 581, 156 P. 2d 543; *Schulte v. Westborough, Inc.,* 163 Kan. 111, 180 P. 2d 278; 172 A. L. R. 259, 265; and my dissenting opinion in *Dalton v. Hill,* 169 Kan. 388, 396, 219 P. 2d 710, and numerous cases therein cited.

If a mere allegation of lack of previous knowledge is sufficient then, of course, that same testimony alone on the trial must be held sufficient to support a finding of lack of prior knowledge. And that would be true irrespective of the amount and character of defense evidence which discredited plaintiff's statement. If, under such a rule a jury rendered a verdict in plaintiff's favor an appellate court would be completely powerless in the premises because, in order to be consistent, it would be obliged to hold there was substantial testimony to support the verdict.

Such a rule of pleading and proof opens the door to the rankest kind of fraud on behalf of a plaintiff who seeks relief from a defendant on the ground of alleged fraud. This fact is also frequently illustrated where, after long lapse of time, defense witnesses are no longer available to refute the alleged fraud.

My purpose, at all times, has been to maintain a rule of pleading which will assist in eliminating the perpetration of fraud on both sides of a lawsuit. My views on the subject are a matter of record and require no further comment at this time.