No. 41,103

W. H. REX, *Appellee,* v. HOWARD C. WARNER and ANNA MARIE WARNER, *Appellants.*

(332 P. 2d 572)

Opinion filed December 6, 1958.

*Allyn M. McGinnis,* of El Dorado, argued the cause, and *Walter F. Mc-Ginnis,* of El Dorado, was with him on the briefs for appellants.

*J. B. McKay,* of El Dorado, argued the cause, and *James B. McKay, Jr.,* of El Dorado, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The action was one to compel specific performance of an oral contract. Defendants, Howard C. Warner and Anna Marie Warner, his wife, filed a special demurrer upon the ground that the alleged oral contract sued upon was barred by the statute of limitations, which was overruled by the trial court, and the defendants have appealed.

Pertinent allegations of plaintiff's amended petition are quoted and summarized as follows: From January 15, 1954, until September 10, 1954, Howard C. Warner was in plaintiff's employ in El Dorado, and Warner and his wife resided in that city. A desirable home was not available for rent, but defendants had an opportunity to purchase a home for $14,000. They could obtain a loan of $9,000 from a savings and loan association but could not pay the balance of the purchase price. Warner orally requested plaintiff to lend defendants $5,000 with which to complete the payment of the purchase price, and,

"orally stated and agreed that if plaintiff would lend defendants said sum, defendants would execute a promissory note payable to plaintiff for said amount and a second mortgage, junior only to said mortgage to Mid-Continent Federal Savings and Loan Association, to secure the payment of said note. Said conversation was renewed and repeated at and during the numerous oral conversations plaintiff had with defendant Howard C. Warner prior to February 12, 1954. During the course of said conversations plaintiff agreed to lend defendants $5.000.00 for said purpose, and plaintiff directed defendant Howard C. Warner to have John L. Harrison, who was then the Secretary of said Loan Association, and who acted as agent of plaintiff and defendants in the transactions herein referred to, prepare a note and second mortgage for said sum of $5,000.00, and defendant Howard C. Warner then and there

orally agreed to have said Harrison prepare said note and mortgage, and orally promised and agreed that he and his wife, defendant Anna Marie Warner, would *thereupon* execute said note and mortgage and return the same to said Harrison for the plaintiff." (Emphasis supplied.)

On February 12, 1954, the transaction was completed and the real estate was conveyed to defendants by warranty deed. As a part of that transaction defendants executed and delivered a first mortgage to the savings and loan association for $9,000 which was duly recorded, and in accordance with plaintiff's and Warner's oral contract, plaintiff executed and delivered his $5,000 check to the savings and loan association, which was used to complete the purchase price. The transaction was handled and closed by Harrison as secretary for the loan association at his office, and plaintiff was not present after he gave Harrison his check. The defendants immediately took possession of the real estate and used and occupied it as their home until shortly before this action was filed September 21, 1957.

Plaintiff alleged he relied upon Warner to execute and cause his wife to execute the note and mortgage and deliver them to Harrison and believed Warner had done so. On September 10, 1954, Warner left plaintiff's employ without informing him that defendants had not executed the note and mortgage. At that time Warner orally inquired of plaintiff what disposition he wanted defendants to make of the real estate. Plaintiff, believing that the note and mortgage had been executed and delivered to Harrison, orally told Warner that so long as he occupied the real estate as his home and kept up the payments on the first mortgage and paid the taxes, he would not charge any interest or require any payments to be made on the $5,000 until after the first mortgage had been paid, but that if the defendants ceased to occupy the property as their home, he would require that it be sold and the proceeds applied to the first mortgage and to plaintiff's mortgage. Warner replied the proposal was very generous, and he accepted it.

On or shortly after October 15, 1954, plaintiff learned for the first time that the note and mortgage had not been executed and delivered to Harrison, and that Warner had not requested Harrison to prepare them. Upon plaintiff's request Harrison prepared the note and mortgage and delivered them to Warner, who informed Harrison they were in accordance with his oral contract with plaintiff and that he and his wife would execute them and return them to

Harrison. A few days later Warner orally informed Harrison that his wife had refused to execute the note and mortgage.

In September, 1955, plaintiff orally requested Warner to have his wife execute the note and mortgage. Warner told plaintiff he had signed both instruments and would have his wife sign them and deliver them to plaintiff or Harrison.

Shortly prior to September 21, 1957, the date this action was commenced, defendants moved to Reno County, Kansas. As soon as plaintiff located them, he went to Arlington and had a conversation with both defendants. Each agreed that plaintiff had loaned the $5,000 and that Warner had orally agreed to give plaintiff a note and second mortgage covering the real estate for said sum, and that defendants owed and would pay plaintiff the $5,000. Warner stated he had signed both instruments, but that Mrs. Warner had not and would not sign them.

It was alleged plaintiff believed and relied upon Warner's statements and representations and was lulled into a sense of security until he was informed by defendants shortly prior to the commencement of this action that Mrs. Warner had not and would not sign the note and mortgage. By reason of Warner's representations and statements, defendants are estopped to plead the statute of limitations.

Plaintiff further alleged he had never seen the note and mortgage and was unable to state the terms and provisions of them; that he did not know the date on which they were prepared; that he did not know whether they were in fact executed by Warner but that both instruments were in the possession of the defendants and the terms and provisions were known to them. The prayer was for a decree of specific performance ordering and directing defendants to execute and deliver the note and mortgage to plaintiff, and further, that in the event the defendants failed to execute both instruments the judgment and decree stand and operate as such note and mortgage; that plaintiff have judgment against the defendants for $5,000 with six percent interest thereon from February 12, 1954, and that it be adjudged and decreed that the mortgage be a valid and subsisting lien subject only to the lien of the first mortgage as security for the payment of the judgment, and that the mortgage be foreclosed, the real estate ordered sold, and the proceeds be applied toward the payment of plaintiff's judgment.

Defendants specify as error the overruling of their special demurrer, and state in their brief the questions presented are as follows: (1) Did plaintiff acquire an equitable mortgage by virtue of the alleged oral contract? (2) Does an equitable mortgage, based solely upon an oral contract have a longer period of time under the statute of limitations than other types of oral agreements where no payment or written acknowledgement of the indebtedness has been made? (3) Was the plaintiff lulled into a false sense of security by statements and representations of the defendants, which caused him to not take legal action until after three years from the date of the alleged transaction, thus tolling the statute of limitations?

With respect to the first question, defendants concede that under the allegations of the amended petition plaintiff is entitled to an equitable mortgage upon the real estate in controversy. They were well advised to make this concession. (*Foster v. Bank,* 71 Kan. 158, 160, 80 Pac. 49; *Charpie v. Stout,* 88 Kan. 318, 322, 128 Pac. 396; *Fitzgerald v. Fitzgerald,* 97 Kan. 408, 155 Pac. 791; *Bank v. Pickering,* 111 Kan. 132, 205 Pac. 1110; *Farmers State Bank v. St. Aubyn,* 120 Kan. 66, 242 Pac. 466; *Assembly of God v. Sangster,* 178 Kan. 678, 290 P. 2d 1057; 18 A. L. R. 1100, anno.) In *Foster v. Bank,* supra, this court said:

"Having obtained the bank's money upon an agreement to give it a mortgage, Underwood should have executed and delivered the promised security. Equity treats that as done which a party under his agreement ought to have done. (*Elston v. Chamberlain,* 41 Kan. 354, 361, 21 Pac. 259.) The court had no alternative but to apply the maxim in this case. (3 Pom. Eq. Jur., 2d ed., § 1237; 1 Jones, Mort., 6th ed., § 163; 11 A. & E. Encycl. of L. 125.)

"The fact that the agreement to give a mortgage was oral does not affect the validity of the bank's lien. It had fully performed its part of the agreement." (l. c. 160.)

No particular formality is necessary in order to make a valid mortgage between the parties. If the transaction resolves itself into security, whatever may be its form, it is in equity a mortgage. (*Charpie v. Stout,* supra; *Assembly of God v. Sangster,* supra.) Any words are sufficient which serve to show a transfer of the mortgaged property as security for the debt, since the lien is created by contract, and, while not sufficient as a legal mortgage, the transaction will generally be regarded in the nature as an equitable mortgage. The form of the contract is immaterial. Although a

lien may not be expressed in terms, equity will imply a security from the nature of the transaction, and give it effect as such in furtherance of the agreement of the parties. The oral contract between the parties pleaded in the amended petition is within the doctrine announced and created a lien in the nature of an equitable mortgage.

The second question posed by defendants is more difficult to answer. The gist of defendants' contention may be stated as follows: Plaintiff claims an equitable mortgage by virtue of the oral contract; that at most under G. S. 1949, 60-306 *Second* the contract bears a three-year limitation period for enforcement; that plaintiff's cause of action accrued February 12, 1954, when the transaction in Harrison's office was completed and defendants failed to execute and deliver the note and mortgage; that since the action was not commenced until September 21, 1957, more than three years after it accrued, the debt was barred and the equitable mortgage, being only an incident of the debt, is likewise barred and the lien of the mortgage is unenforceable.

Plaintiff contends that Warner promised to give him a note and mortgage; that pursuant to the equitable maxim, equity regards as done that which should have been done, the parties are in the same situation as if the promised note and mortgage had been given; that there is no reason to treat the promised instruments as having been executed for the purpose of imposing a lien, and accord them different considerations for the purpose of determining the limitation period; that the note and mortgage should be treated as having been executed, and that the action is in fact founded upon the written instruments for which the five-year limitation period is applicable (G. S. 1949, 60-306, *First*).

The question presented is: Was the action barred? It is, of course, fundamental that if a petition shows on its face the action is barred by the statute of limitations it is demurrable on the ground that it fails to state a cause of action (*Stratton v. Wood Construction Co.*, 178 Kan. 269, 272, 284 P. 2d 636, and cases cited), but the rule is equally well established that unless a petition shows that fact affirmatively, no demurrer lies, and the bar of the statute must be pleaded to be available as a defense. (*Stratton v. Wood Construction Co.,* supra; *Kerr v. Robertson*, 176 Kan. 637, 272 P. 2d 1062.) In view of the foregoing, the sufficiency of plaintiff's petition must be determined pursuant to the rule that, without other

attack, the demurrer admits all well-pleaded facts and allegations which must be liberally construed in favor of the pleader and given the benefit of all reasonable inferences. (8 West's Kansas Digest, Pleading, § 34 (1), (3), also 4 Hatcher's Kansas Digest [Rev. ed.], Pleading, §§ 35, 37.)

We are not disposed to consider plaintiff's contention as well taken. Regardless of the fact that, in a given situation, equity will impose a lien upon property of the borrower, under the maxim that equity treats as done that which a party under his agreement ought to have done, the arm of equity imposing the lien does not change the nature of the contract from an equitable mortgage to that of a written agreement between the parties, thus making the limitation period for enforcement of the obligation governable by G. S. 1949, 60-306, *First*.

No doctrine of equity jurisprudence is better settled than the rule that in the absence of the existence of a statute of limitations, the time in which a party will be barred from relief in a court of equity must necessarily depend to a certain extent upon the facts of each case as they may arise; but, when the statute has fixed the period of limitations under which the claim, if interposed in a court of law, would be barred, courts of equity by analogy follow the limitations provided by law. (*Bell v. Bank of Whitewater,* 146 Kan. 901, 906, 73 P. 2d 1059; 34 Am. Jur. Limitation of Actions, § 59, p. 55; 53 C. J. S., Limitations of Actions, § 36, p. 987; 30 C. J. S., Equity, § 131, pp 560, 561; 1 Wood on Limitations [4th Ed.], 272, 277; Kelly, Code, Statute of Limitations, § 49, p. 54.) Under G. S. 1949, 60-306, *Second,* an action upon a contract not in writing must be commenced within three years after the cause of action shall have accrued. Generally speaking, a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises, or when there is a demand capable of present enforcement. (54 C. J. S., Limitations of Actions, § 109, pp. 11, 12.) Stated differently, an obligation must exist upon one party in favor of the other, the performance of which is refused. The true test to determine when a cause of action has accrued is to ascertain the time when plaintiff could first have maintained his action to a successful result. (*Howard v. Ritchie,* 9 Kan. 102; *McBride v. Mortgage Co.,* 44 Kan. 351, 24 Pac. 428; *Railway Co. v. Grain Co.,* 68 Kan. 585, 75 Pac. 1051;

*Bruner v. Martin,* 76 Kan. 862, 865, 868, 93 Pac. 165; 3 Hatcher's Kansas Digest [Rev. ed.], Limitation of Actions, § 21.) Plaintiff alleged that he fully performed his part of the contract on February 12, 1954, but that defendants failed on that date to perform their part and have refused to perform ever since. According to plaintiff's allegations the defendants promised and agreed that they would "thereupon"—that is, on February 12, 1954, execute the note and mortgage and return them to Harrison for the plaintiff. Having failed to do so, the defendants breached their contract with plaintiff and his cause of action accrued on that date. Plaintiff, therefore, had a remedy following the defendants' breach of the contract on February 12, 1954, by bringing an action to recover the amount loaned or an action for specific performance of the oral contract. Since he did not commence his action until September 21, 1957, it was not brought within three years from the time his cause of action accrued, and G. S. 1949, 60-306, *Second,* now bars recovery. This court has repeatedly held that where the statute of limitations bars enforcement of the debt which is secured by a mortgage— here an equitable mortgage, such mortgage is only an incident of the debt, and if the latter is barred from enforcement so also is the mortgage. (*Kulp v. Kulp,* 51 Kan. 341, 32 Pac. 1118; *King v. Rodgers,* 108 Kan. 311, 195 Pac. 598; *Jones v. Hammond,* 118 Kan. 479, 235 Pac. 857; *Troxell v. Cleveland Oil Co.,* 145 Kan. 658, 66 P. 2d 545; *Dickey v. Wagoner,* 160 Kan. 216, 160 P. 2d 698; 53 C. J. S., Limitations of Actions, § 9b, pp. 929, 930). It necessarily follows that since the action to recover the $5,000 was barred, the action to specifically perform the oral contract was also barred, and the lien of the equitable mortgage arising out of the transaction was unenforceable.

Plaintiff claims the defendants are estopped to rely upon the statute of limitations; and contends he did not commence his action because he was lulled into a sense of security by Warner's oral promises and agreements from time to time to the effect that he would execute the note and mortgage and procure the execution of the same by his wife. Plaintiff refers to the allegations of the amended petition and specifically to conversations alleged to have occurred on February 12, 1954, October 15, 1954, in September, 1955, and shortly prior to the commencement of this action on September 21, 1957. While this court recognizes the doctrine of equitable estoppel *in pais* to prevent a resort to the statute of limi-

tations, and that a debtor or defendant may, by his representations, promises, or conduct, be estopped to assert the statute where other elements of estoppel are present (*H. & S. Rld. Co. v. Comm'rs of Kingman Co.*, 48 Kan. 70, 28 Pac. 1078; *Railway Co. v. Pratt*, 73 Kan. 210, 85 Pac. 141; *O'Leary v. Street Railway Co.*, 87 Kan. 22, 123 Pac. 746; *Derby Oil Co. v. City of Oxford*, 134 Kan. 59, 4 P. 2d 435; *Pessemier v. Zeller*, 144 Kan. 726, 62 P. 2d 882, 107 A. L. R. 1523; *Cole v. City of Kanopolis*, 159 Kan. 304, 153 P. 2d 920), we do not believe the facts alleged are sufficient to invoke that doctrine in the instant case. It is a legal maxim well understood that nothing can interrupt the running of the statute of limitations, and it is commonly stated without any qualification. Courts, however, have ingrafted upon such statutes an exception based upon estoppel. Generally speaking, actual fraud in the technical sense, bad faith, or an attempt to mislead or deceive is not essential to create such an estoppel; to invoke the doctrine, the debtor or defendant must have done something that amounted to an affirmative inducement to plaintiff to delay bringing the action. (*Railway Co. v. Pratt*, supra; *Pessemier v. Zeller*, supra; *Cole v. City of Kanopolis*, supra; 53 C. J. S., Limitations of Actions, § 25, p. 966; 34 Am. Jur., Limitation of Actions, § 412, p. 324.)

Plaintiff's allegations show that a few days after October 15, 1954, notwithstanding Warner's repeated promises to execute and deliver the note and mortgage, his agent, Harrison, was informed that Mrs. Warner had not signed the instruments and refused to do so. Later, in September, 1955, plaintiff called upon Warner who again agreed to execute and deliver the instruments and to have his wife do the same. For approximately two years thereafter plaintiff did nothing toward the enforcement of his right and did not investigate the reason Warner's wife failed to sign the note and mortgage until shortly before September 21, 1957. The plaintiff was bound to rely upon the statements of both Warner and his wife and we do not think he can rely upon the statements of one of them when advised that the other had refused to sign and execute the instruments. It was within plaintiff's domain to ascertain why the defendants refused to perform and where the means of knowledge with respect to his rights or liabilities are available to him, he may not ignore the requirement of due care and at the same time invoke the doctrine of equitable estoppel. That doctrine is not available for the protection of one who has suffered loss solely by reason of his own acts or omissions. Equity aids the vigilant and not those who slum-

ber on their rights. (30 C. J. S., Equity, § 100, p. 499.) It was not alleged that Warner asked for an extension of time to pay, or sought dismissal of an action. Indeed, a suit was never proposed or threatened. Neither was there an agreement on his part not to plead the statute, and he made no request for indulgence. The most that can be said is that he told both plaintiff and his agent Harrison that he would sign the instruments, that he had signed them, and that he would have his wife execute them. There was no fiduciary or confidential relationship alleged to exist between plaintiff and defendants, and we hold that neither the conduct nor the relationship out of which it grew is sufficient at law to set up an estoppel. Consequently, G. S. 1949, 60-306, *Second,* must be applied since we are not justified in reading into the statute exceptions not contained in it.

It would unduly extend this opinion to discuss and differentiate the authorities cited in the briefs and other cases examined by us. But, running through virtually all of those examined and to which attention has been called, there were present some actual representations and inducement clearly intended to cause the withholding of suit, or a change of position to the detriment of the person in whom the right of action existed.

The judgment of the district court is reversed with directions to sustain the defendants' demurrer to plaintiff's amended petition.

It is so ordered.

SCHROEDER, J. (dissenting): In my opinion the judgment of the trial court should be affirmed on the ground that the debtor is estopped from asserting the statute of limitations for having induced the creditor to let the period go by in which suit could be brought and his inducements were of such character as to make it iniquitous to permit the statute to be asserted.

The transaction giving rise to the obligation for which suit was brought was not a commercial transaction in the ordinary sense of the word. While the relationship of employer-employee existed between Rex and Warner the allegations of the petition liberally construed allege more. Construed from its four corners the petition alleges a confidential relationship, one in which Warner became obligated in a fiduciary capacity. Howard C. Warner was specifically directed by the plaintiff to have Harrison, who acted as agent of plaintiff and defendants in the transaction, prepare a note and second mortgage for the sum of $5,000 following which Howard C.

Warner then and there orally agreed to have said Harrison prepare said note and mortgage, and orally promised and agreed that he and his wife, the defendant, Anna Marie Warner, would execute said note and mortgage and return the same to said Harrison for the plaintiff. It was alleged that the defendant did not prior to leaving the plaintiff's employ request said Harrison to prepare said instruments. The confidential relationship existing between the parties is indicated by plaintiff's inaction as a direct result of further conversations, inducements, statements and promises made by Howard C. Warner.

While no Kansas case to which we have been cited is directly in point and our research has disclosed none, *Railway Co. v. Pratt*, 73 Kan. 210, 85 Pac. 141, is somewhat analogous and indicative of the position taken by this court in the past where it was said concerning the assertion of the statute of limitations:

". . . The ordinary rules of justice and fair dealing rebel at the suggestion . . ." (p. 218.)

The Oklahoma Supreme Court in *Douglass v. Douglass*, 199 Okla. 519, 188 P. 2d 221, has had the precise question here presented before it for consideration. There the relationship was between a father and a son. The Oklahoma court in a four to three decision upheld a petition challenged by demurrer on the ground that the debtor was estopped from pleading the statute of limitations.

Regarding the equitable doctrine of estoppel language appropriate to the case here is used in 34 Am. Jur., Limitation of Actions, §§ 411, 412 and 413, as follows:

"It is established by the overwhelming weight of authority that the equitable doctrine of estoppel in pais is applicable in a proper case to prevent a fraudulent or inequitable resort to the statute of limitations, and that a debtor may by his representations, promises, or conduct be estopped to assert the statute where the elements of estoppel are present. Concisely stated, parties may by their words or conduct estop themselves from pleading limitation. The doctrine of estoppel to rely on the defense of limitations is entirely independent of statutes providing for the suspension of the statute by an acknowledgment or new promise, and will not be applied except where it would be inequitable to refuse to apply it. In some instances, equity courts have acted by issuing an injunction to prevent a defendant from interposing the defense of the statute of limitations, on the ground that he was estopped to plead such a defense. A few courts have held that no cognizance can be taken in a law action of the equitable doctrine that a debtor may estop himself by acts and conduct to rely upon such a defense. Generally, however, the rule that the doctrine of estoppel in pais will be applied. to prevent a fraudulent or inequitable resort to the statute of limitations is stated without any distinction

between actions at law and actions in equity. Clearly, where courts of law and courts of equity have been consolidated, the application of such doctrine to prevent a reliance upon the defense of the statute of limitations should not depend upon whether the action is at law or in equity . . ." (p. 323.)

"The general principles, elements, and requisites of estoppel in pais apply in cases where the doctrine is sought to be applied to prevent the setting up of the statute of limitations. While the cases in which an estoppel to defend upon the ground of the statute of limitations are confined generally to instances in which an element of deception is involved, actual fraud in the technical sense, bad faith, or an intent to mislead or deceive is not essential to create such an estoppel. It is sufficient for this purpose that the debtor made misrepresentations which mislead the creditor, who acted upon them in good faith, to the extent that he failed to commence action within the statutory period . . ." (p. 324.)

"Opinions of court sometimes contain broad language which indicates that any conduct of the defendant which induces inaction on the part of the plaintiff whereby suit is delayed beyond the limitation period will estop the defendant from relying upon the statute of limitations. *It has been said that any agreement whereby the claimant is lulled into security and thereby delays action creates an estoppel, and bars the debtor from relying on the statute of limitations* . . ." (Emphasis added.) (p. 326.)

See, also, *Speidel v. Henrici,* 120 U. S. 377, 386, 387, 7 S. Ct. 610, 30 L. Ed. 718; *Schram v. Burt,* 111 F. 2d 557; *Waugh v. Lennard,* 69 Ariz. 214, 211 P. 2d 806; 130 A. L. R. 1; and 24 A. L. R. 2d 1404.

In my opinion plaintiff's plea of estoppel was sufficient to justify the trial court in holding that on the face of the petition an assertion of the statute of limitations was invalid.

PARKER, C. J., concurs in the foregoing dissent.