No. 30,067.

The Hepler State Bank, *Appellee*, v. Theo Cox and The Stark State Bank, Garnishee (The Peru State Bank, Interpleader, *Appellant*).

(3 P. 2d 468.)

Opinion filed October 10, 1931.

*J. W. Dalton*, of Sedan, for the appellant.

*J. M. Humphrey*, of Erie, and *Hugo T. Wedell*, of Chanute, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action for the recovery of money. Judgment was against defendant by default. Issue was joined between plaintiff and interpleader, who claimed certain money which plaintiff had attempted to reach by garnishment process. Judgment was for plaintiff and against the interpleader. The interpleader appeals.

The facts are as follows: On May 2, 1930, defendant, Theo Cox, presented a check to the Hepler State Bank for $850. He deposited $350 and drew $500 in cash. Within a few minutes the check was discovered to be drawn on a bank in which the maker had no deposit. The president of the bank learned of this and immediately started in pursuit of Cox. Cox on leaving the Hepler bank proceeded to the Stark bank and deposited $250. He made this deposit for the purpose of having this bank transmit it by wire to the Peru State Bank. This was done at once by wiring the correspondent bank of Kansas City to that effect. Cox at that time had an overdraft at the Peru State Bank. The $250 was intended to cover that overdraft. Within a few minutes after this was done the president of the Hepler State Bank arrived at Stark and learned what had been done. He told about the transaction at his bank. At his request the president of the Stark bank wired the Peru bank through the correspondent bank to disregard the previous wire as to the credit to be given Cox. Early that afternoon the Peru bank called up the Stark bank and advised that it had received the two messages at the same time and that it did not know what to do about the matter. The books of the Peru bank showed a credit to Cox of $250 on the next day. It was explained that this was because the books of the bank were balanced and transactions shown as of 11 o'clock a. m. of each day. The wire directing the credit was received about 11:20 a. m., May 2.

Appellee brought this action against Cox. The petition alleged the cashing of the worthless check and damages thereby in the amount of $250. Judgment was prayed for in that amount. At the same time appellee filed a garnishment affidavit in which it charged that the Stark bank had $250 under its control belonging to Cox.

The Stark State Bank answered the garnishment process by a statement setting out the facts about as they have been given here.

The Peru State Bank then secured permission to interplead for the purpose of setting up its claim to the funds. It set out the deposit of the $250 in the Stark State Bank by Cox for the purpose of transmitting it to the Peru bank. It also set out copies of both telegrams heretofore referred to in this opinion. It alleged that the $250 was credited to the account of Cox immediately upon receipt of the first wire and before receipt of the second one. The interplea alleged that the $250 was deposited for the purpose of

transmitting it to the Peru bank and for no other purpose, and that the attempt to cancel the transfer of the fund was wholly without effect.

To this interplea appellee filed a reply alleging that at the time the deposit was made in the Stark bank the $250 was the property of Cox; that it was not made for any particular purpose; that he did ask the Stark bank to transmit it to the Peru bank after the deposit had been made; that after the sending of the first wire to the Peru bank, but before its delivery, the president of the Hepler bank appeared and claimed that the money had been obtained by fraud, and caused the sending of the second wire; that the Stark bank did not at any time hold the money for any specific purpose, and that while the Stark bank was holding this money in the ordinary course of business garnishment process was served upon it.

Before the case came to trial appellee, the Hepler bank, filed a further answer alleging that the $250 deposited was the identical money that had been obtained from it by fraud; that the money was not mingled with the other money of the Stark bank and that the title to the $250 never passed to Cox from appellee. The case came on to be heard. Judgment was against Cox by default. Issues were joined between the Hepler bank and the Peru bank as to who was entitled to the $250 alleged to be held by the Stark bank.

At the end of the taking of evidence the Hepler bank asked and secured permission to withdraw its reply and to file an additional answer to the interplea of the Peru bank. It alleged that the $250 was obtained by Cox from the Hepler bank through fraud; that he never had title to it, and that hence the interpleader never had title to it.

The court made findings of fact and conclusions of law as follows:

"First, that the said Theo Cox obtained the money representing the fund in question from the said Hepler State Bank through false representations and by means of a bogus check. That at the time of depositing said check and securing the funds thereon, the said defendant, Theo Cox, knew that the same was a false and fraudulent instrument.

"Second, that the plaintiff, garnishee or interpleader, or any of them, had no notice or knowledge of said fraud at the time it was perpetrated and were not parties thereto and did not contribute in any way to the perpetration thereof.

"Third, that on account of the false and fraudulent representations of the said defendant, Theo Cox, and his acts in procuring the money from the said Hepler State Bank, the ownership of said money never changed from the Hepler State Bank.

"Fourth, that said fund in the hands of the garnishee is the property of the plaintiff and the garnishee should be ordered to pay to the clerk of this court the said sum of $250 held by it for said plaintiff.

"Wherefore, it is by the court ordered, adjudged and decreed that the Stark State Bank, garnishee herein, be and is hereby ordered and directed to pay to the clerk of this court the sum of $250 held by it as garnishee of the defendant, Theo Cox."

It will be seen that appellant started out with the theory that the $250 was the property of Cox and was held by the Stark bank just as any deposit would be held.

Later the theory was adopted that since this money was obtained by fraud it never became the property of Cox. This theory was followed by the trial court in rendering judgment.

The trouble about it is that it depends for its strength upon the allegation that the money deposited by Cox in the Stark bank was the identical $250 obtained from the Hepler bank. We are unable to find any evidence of this in the record. Appellee urges that the finding that the ownership of the $250 never passed from the Hepler bank is a finding upon that point which under the well-established rule of this court will not be disturbed. However, we have concluded that the finding referred to is a conclusion of law rather than a finding of fact and that there is an absence of evidence in the record upon which to base the findings of fact necessary to sustain that conclusion. Since we have reached the above conclusion, it becomes necessary for us to examine the effect of the deposit and the wire of transmittal. On that point we have reached the conclusion that the evidence is undisputed that the $250 was deposited in the Stark bank by Cox for the specific purpose of transmittal to the Peru bank and for no other purpose. The Stark bank became the agent of Cox for the purpose of transferring this fund. (*Brockmeyer v. National Bank,* 40 Kan. 376, 19 Pac. 855, 7 C. J. 632.) All control of the Stark bank over that deposit ceased with the sending of the first wire.

The judgment of the district court is reversed, with directions to order the Stark State Bank to pay the $250 held by it as garnishee in this case to the Peru State Bank.