(699 P.2d 549)

No. 56,205

CAPITAL SERVICES, INC., *Appellee*, v. DAHLINGER PONTIAC-CADILLAC, INC., *Defendant*, and KANSAS STATE BANK AND TRUST Co., *Appellant*.

Opinion filed May 2, 1985.

*John R. Morse*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, for the garnishee/appellant.

*James A. Walker*, of Martin, Pringle, Oliver, Triplett & Wallace, of Wichita, for the appellee.

Before FOTH, C.J., SWINEHART, J. and FREDERICK WOLESLAGEL, District Judge Retired, Assigned.

WOLESLAGEL, J.: The Kansas State Bank and Trust Company (Bank) appeals a judgment holding that deposits in an account of its customer, Dahlinger Pontiac-Cadillac, Inc. (Dahlinger), were subject to an order of garnishment issued by Capital Services, Inc. (Capital), Dahlinger's judgment creditor. This account was maintained to provide funds to meet Dahlinger's payroll, Dahlinger then being in financial difficulty.

All deposits to this account were made from funds furnished by the Bank. The background for this was that both Dahlinger and the Bank were trying to keep ailing Dahlinger in business until it could be sold as a going concern. In addition to other liabilities, it was indebted to the Bank in excess of the apparent value of its physical assets.

The deposit procedure conformed to an agreement between the two that Dahlinger could overdraw an account they termed as "general." Dahlinger was required to provide specific payroll

itemization for approval by the Bank's president or chairman of the board. Upon approval, a check on the overdrawn "general" account would be issued in favor of the payroll account so that all payroll checks would be honored upon presentation.

The Bank's answer to Capital's order of garnishment was unusual in two ways:

1. In the belief that it could set off a negative balance of approximately $24,000 in the "general" account against a positive balance of approximately $4,000 in the payroll account, it responded that Dahlinger was overdrawn in the amount of $20,032.23.

2. These balances were as of August 4, 1977, the date the order was served and the date shown on the answer. While the Bank maintained it was mailed to the clerk of the district court on that day, it was not marked filed by the clerk's office until August 19. By then, an additional $14,000 had been deposited in the payroll account through additional overdrafts on the "general" account. The Bank made no special entries as to set-offs.

In the trial court, Capital was unsuccessful when it first sought discovery of the Bank's records from August 4 to August 19, and the garnishment was involuntarily dismissed. This court reversed the trial court in an unpublished opinion which was affirmed on petition for review. *Capital Services, Inc. v. Dahlinger Pontiac-Cadillac, Inc.*, 232 Kan. 419, 657 P.2d 36 (1983). The Bank was thereby required to reveal the items in the payroll account from August 4 to August 19.

The ensuing trial resulted in a judgment for Capital and against the Bank for $26,772.96. The trial judge entered detailed findings of fact. As legal conclusions, the trial judge reasoned that a special account is not subject to set-off; that the Bank waived the right of set-off by continuing to furnish deposits and honor payroll checks after August 4; and that since the Bank claimed it had the right of set-off, it could not rely on an inconsistent claim the deposits were special.

Before turning to the facts as found below, we believe some observations about the law of bank deposits and about the positions taken by the Bank would be helpful. The customary deposit results in title to the deposit passing to the bank. *Denison State Bank v. Madeira*, 230 Kan. 684, 695, 640 P.2d 1235

(1982). These deposits are subject to garnishment as a debt owing by the bank to the depositor. K.S.A. 60-717.

Special circumstances, nevertheless, may alter this customary relationship. When there is a specific direction or agreement relative to a deposit account the purpose of it must be carried out. This type account is denominated in legal language as "special" or is said to be "held in trust" by the bank for the expressed purpose. Instead of the bank's becoming a debtor, it becomes an "agent or trustee" of the funds to effect that purpose. *Kaufman v. First National Bank of Opp, Alabama,* 493 F.2d 1070, 1072 (5th Cir. 1974). Accord 5B Michie, Banks and Banking § 328, pp. 325-330 (1983).

A factor that apparently influenced the reasoning of the trial judge was that, throughout the trial below, the president of the Bank continued to opine that the Bank had the right of set-off. In both its trial and appellate briefs, however, the Bank claims the deposits were special. Capital now suggests this latter claim cannot be considered because it is raised too late. As we view it, the special deposit argument simply presupposes the Bank was mistaken in its belief it could set off the two accounts. This is a contract case with the question being, what was the agreement between Dahlinger and the Bank as to the payroll account? That a party believes it has certain rights under a contract neither increases nor diminishes those rights; nor does it foreclose a court from correctly determining the rights. We note that there is no pattern of conduct adopted by the parties to indicate there ever was an agreement which modified the one made when the payroll account was established. As to Capital's argument that the "special deposit" position came too late, we note that the position was taken in trial below. It was argued, it was included in the trial brief and, as will be shown hereafter, it was addressed in the trial court's findings of fact. Thus, it is not a position first taken on appeal and foreclosed for consideration under the holding in *Lostutter v. Estate of Larkin,* 235 Kan. 154, 166, 679 P.2d 181 (1984).

The trial court made the following findings of fact:

"4. Beginning in May of 1977, the defendant and the garnishee-defendant started the following practice: Officers of the bank, principally the Chairman of the Board and the President, reviewed checks drawn on the general checking account on a daily basis and determined whether or not those checks would be paid by the bank, placing the account in a further overdraft status.

"5. At least one of the checks reviewed in accordance with that practice was a

check payable to the defendant for deposit in its payroll account. The officers of the garnishee-defendant and the principal defendant discussed this check and reached what has been characterized as an oral agreement governing the payroll account. These conversations in fact resulted in a unilateral extension of credit under certain terms by the bank.

"6. One of the terms imposed by the bank was that checks drawn on the payroll must be only for payroll purposes. Previously, the defendant drew only payroll checks on the payroll account for management and bookkeeping convenience, to keep current with payroll deductions, etc. On some occasions the bank officers looked at the payroll check register prepared by the defendant at the same time that they approved the check drawn on the general account for deposit in the payroll account. On other occasions the bank simply accepted the representation made by the defendant's employee that what was being presented was indeed a check for the payroll.

"7. No audit of the payroll account has been admitted in evidence and the possibility exists that the defendant could have concealed payments for other purposes from this account. There is no evidence that this occurred. There is an unexplained ending balance in the payroll account of approximately $446.00. The Court does not believe that the character of this unexplained ending balance is a controlling fact in this case.

. . . .

"11. The president of the bank thought he might have had a moral obligation to pay the payroll checks.

"12. From August 4 to August 19, 1977, no checks were shown to be drawn on the payroll account for anything other than regular payments of accrued wages, payroll draws and advances. Draws meaning draws against some sort of guaranteed base salary and advances meaning advances against monies not yet earned.

"13. The following deposits to the payroll account occurred on the dates listed.

| Date | Gen'l Acct. Check # | Amount | |
|------|---------|--------|--|
| 08/04/77 | | $ 4,061.54 | (beginning balance) |
| 08/09/77 | 13924 | 3,123.85 | (deposit) |
| 08/09/77 | 13922 | 4,136.87 | (deposit) |
| 08/12/77 | 13948 | 4,146.94 | (deposit) |
| 08/19/77 | 13920 | 2,688.00 | (deposit) |
| | TOTAL | $18,157.20" | |

Finding of fact number six is fully supported by the testimony of the Bank's president. When asked if there was an understanding about how the payroll funds would be used, he answered, "Definitely, only to meet the payroll." Dahlinger's former office manager responded similarly: "[T]hose funds were to fund—or to match exactly the amount of pay that came off of whatever pay—from whatever pay period we're talking about. . . ." There was simply no contrary evidence of the

parties' agreement and all checks drawn on the account were for payroll.

The evidence, therefore, is subject to no construction except that the parties established a special account for payroll deposits. See *Ballard v. Bank*, 91 Kan. 91, 95-96, 136 Pac. 935 (1913), in which it was held that deposits were special because the depositor and the bank agreed that proceeds from livestock sales would be used to pay checks drawn to pay for other livestock. See also *Hepler State Bank v. Cox*, 133 Kan. 753, 3 P.2d 468 (1931), holding that a deposit for the stated purpose of effecting a transfer of funds to a different bank was special and thus not subject to garnishment.

Other cases holding special deposits are not available to garnishment include *Gilley v. Farmer*, 207 Kan. 536, 485 P.2d 1284 (1971). The rationale for the special deposit rule is stated crisply in *B. & M. R. Rld. Co. v. Thompson*, 31 Kan. 180, 196, 1 Pac. 622 (1884): "Garnishee proceedings mean this: the creditor takes the place of the debtor. 'Only this and nothing more.' The former takes only that which the latter could enforce." This rule was quoted with approval in *Harpster v. Reynolds*, 215 Kan. 327, 330, 524 P.2d 212 (1974); in *Gilley*, 207 Kan. at 544; and in *National Surety Corporation v. Gillette*, 194 Kan. 604, 606, 400 P.2d 681 (1965).

Dahlinger could not have paid Capital by drawing a check on the payroll account. Neither could the Bank have honored such a check or set off the amount without liability for breach of its trust.

Not directly, but at least inferentially, Capital suggests the account does not qualify as a special account because funds for the deposits came from the Bank instead of from Dahlinger. While that fact may have helped mislead the Bank to its claim of set-off, it is of no legal consequence. *Iowa M. L. Ins. Co. v. De La Hunt*, 197 Iowa 227, 196 N.W. 17 (1923); *Geyer & Adams Co. v. Bk. of Central Ark.*, 170 Ark. 1016, 282 S.W. 358 (1926).

Since Dahlinger could not have used the money in the special account to pay Capital, the trial court erred in holding that the account was subject to garnishment by Capital.

Reversed.