(130 P.3d 1212)

No. 93,622

LSF FRANCHISE REO I, LLC, *Plaintiff/Appellant,* v. EMPORIA RESTAURANTS, INC., and NORTH STAR HOLDINGS OF MISSOURI, L.L.C., *Defendants,* and POLARIS RESTAURANTS, INC., *Defendant/Appellee.*

Opinion filed March 3, 2006.

*Thomas A. Krueger,* of Krueger Law Offices, of Emporia, for appellant.

*Cynthia F. Grimes,* of Grimes & Rebein, L.C., of Lenexa, and *Jeffry J. Larson,* of Miller & Larson, Chtd., of Emporia, for appellee Polaris Restaurants, Inc.

Before PIERRON, P.J., MARQUARDT and MALONE, JJ.

MARQUARDT, J.: LSF Franchise REO I, LLC (LSF) appeals from a trial court order which quashed a garnishment of Polaris Restaurants, Inc.'s (Polaris) bank accounts. We affirm.

Emporia Restaurants, Inc.; Polaris Restaurants, Inc.; and North Star Holdings of Missouri, L.L.C., signed two promissory notes totaling $2,600,000. The notes were secured by a mortgage, assignment of leases and rents, and a fixture financing statement. By assignment, LSF is the holder of the notes.

On September 22, 2003, LSF filed a petition to foreclose on the mortgage and personal property collateral, and for breach of the promissory notes. On March 18, 2004, the trial court filed a journal entry of judgment and foreclosure against Emporia Restaurants,

Inc.; Polaris Restaurants, Inc.; and North Star Holdings of Missouri, L.L.C.

On July 23, 2004, the trial court issued a garnishment order to Commerce Bank (Commerce) for funds, credits, or indebtedness held by Commerce for Polaris not to exceed $2,624,361.61. Commerce answered the order stating that it held $33,686.73 in accounts belonging to Polaris.

Commerce subsequently amended its answer, stating that on the date the garnishment order was served, Polaris had two checking accounts with Commerce. One account had a balance of $24,069.66 and the other account had a balance of $9,617.07. However, deposits made to the accounts prior to receipt of the garnishment order which were part of the $33,686.73 reported to the trial court were returned to Commerce as unpaid by the paying bank. After subtracting the returned amounts, $9,086.73 remained in Polaris' Commerce accounts.

On August 9, 2004, Polaris filed a motion to quash the trial court's garnishment order. At the hearing, Polaris testified that one account was for operating funds and the other was a payroll account, although Commerce did not have them designated as such. Polaris had scheduled an electronic funds transfer for July 27, 2004, in the amount of $8,791.64 for payroll taxes before it received the LSF garnishment. Polaris testified that Commerce's amended garnishment answer indicated it held $6,670.66 in the operating account and $2,418.07 in the payroll account. The payroll account did not have sufficient funds to cover the transfer, so Polaris intended to transfer the money from the operating account into the payroll account to cover the electronic funds transfers for the payroll tax. Polaris argued that the funds in the account were not actually property of Polaris because the employee taxes were the property of the employees, United States Treasury, and the Kansas Department of Revenue.

The trial court found that the two accounts were actually held in trust for taxes and arrangements for payment of the taxes by electronic transfer were made prior to the receipt of the garnishment. The trial court found that the funds should be returned to Polaris for the purpose of paying taxes only. LSF appeals.

LSF argues that the trial court erred in granting Polaris' motion to quash the garnishment, arguing that the funds in Polaris' accounts could not be protected as payroll taxes. LSF argues that the account is not protected because Polaris did not designate it as a special account with the bank to be used exclusively for the purpose of paying taxes.

The function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). An appellate court's review of conclusions of law is unlimited. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004).

K.S.A. 60-729 provides:

"Garnishment is a procedure whereby the wages, money or intangible property of a person can be seized or attached pursuant to an order of garnishment issued by the court under the conditions set forth in the order."

In this case, the garnished property consisted of funds in two accounts at Commerce in Polaris' name. LSF argues on appeal that the funds were in Polaris' account and were not designated with the bank as funds in which someone else had an interest. LSF argues that because Polaris could access the funds at any time and was not restricted as to how it could use the funds, the funds should have been garnished. However, LSF cites cases from other jurisdictions to support this argument. It cites to one Kansas case which deals with a similar issue in a different context.

In *Capital Serv., Inc. v. Dahlinger Pontiac-Cadillac, Inc.*, 10 Kan. App. 2d 328, 699 P.2d 549, *rev. denied* 237 Kan. 886 (1985), the court was presented with an issue of a judgment creditor seeking to garnish funds from a debtor's bank account. The bank refused to garnish the bank account because the account was a specially designated payroll account where the debtor could not draw funds for any purpose other than payroll. The debtor could not have withdrawn the money from the account to pay the creditor.

The *Capital Services* court found the bank appropriately refused to garnish those funds because the account was a special account, held in trust for a specific purpose. 10 Kan. App. 2d at 332.

In *Capital Services*, the bank refused to comply with the garnishment order. The issue was whether the bank could refuse to comply because of the special relationship with the debtor. Furthermore, although the *Capital Services* court held that the bank could refuse to garnish the funds when there was a special account set up for the debtor's payroll, the court did not require a special account to be created in order to protect a payroll account. In the case at bar, Commerce complied with the order of garnishment, so the issue is not whether the bank can refuse to garnish the funds, but whether the debtor can overcome the garnishment order by presenting evidence to show the funds in the account belong to someone else.

No case could be found where a debtor claimed the money being garnished from a bank account was being held in trust for someone else. The most analogous situation is one of joint tenancy because a joint tenant does not technically own all the funds in an account. Likewise, in this case, Polaris is claiming it did not have ownership over all the funds LSF attempted to garnish. K.S.A. 60-733(a), (b), and (c) provide direction on the proper procedure for garnishing funds held by financial institutions. K.S.A. 60-733(d) provides information for the garnishee on how to answer an order of garnishment. With regard to joint tenancy, K.S.A. 60-733(f) provides:

"If an order of garnishment attaches funds, credits or indebtedness held by a bank, savings and loan association, credit union or finance company and the garnishee holds funds or credits or is indebted to the judgment debtor in an account which judgment debtor owns in joint tenancy with one or more individuals who are not subject to the garnishment, the garnishee shall withhold the entire amount sought by the garnishment. Neither the garnishor nor the garnishee shall be liable to the joint owners *if the ownership of the funds is later proven not to be the judgment debtor's.*" (Emphasis added.)

This statute recognizes that a debtor or joint tenant can offer proof as to the ownership of the funds. Though the judgment creditor is released from liability if the ownership of the funds is later

shown not to be the debtor's, it does not preclude the offering of evidence prior to garnishment as to the ownership of the funds.

In *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 574 P.2d 1382 (1978), a judgment creditor attempted to garnish a debtor's joint tenancy bank account established by the debtor with her spouse. The court held that the creditor could garnish the account, and such garnishment would sever the joint tenancy, leaving husband and wife as tenants in common. The *Walnut Valley* court also concluded that the burden of rebutting the presumption fell on the person attacking the presumption of equal ownership. Thus, the wife's creditor could garnish only one-half of the account unless it could prove that the wife had a greater interest. Or, if the wife could prove that she had less than a one-half interest, the creditor would be limited to that amount. 223 Kan. at 463-64.

In joint tenancy cases, the financial institution is required to inform the creditor that the debtor's account is held in joint tenancy. K.S.A. 60-733(d)(2). In this case, Commerce was unaware that the funds were intended to pay the IRS for payroll taxes and did not inform LSF that the funds belonged to someone else. However, " '[g]arnishment is a provisional remedy created by statute to enable a creditor to satisfy a debt out of property, money or credits belonging to the debtor which are in the possession or under the control of another.' [Citation omitted]" *Nicklin v. Harper*, 18 Kan. App. 2d 760, 766, 860 P.2d 31, *rev. denied* 253 Kan. 860 (1993). If the money truly did not belong to Polaris, LSF was not entitled to garnish the funds.

At the hearing before the trial court, Polaris' president testified that $8,610.20 was to be transferred from Polaris' payroll account to the IRS. On July 23, 2004, an arrangement was made for an electronic transfer to the IRS on July 27. The president also testified that although some of the funds were in the operating account, Polaris had intended on transferring those funds to the payroll account to effectuate the transfer.

Garnishment is a statutorily created remedy, and there is nothing in the garnishment statutes which would prevent a court from hearing evidence about the ownership of funds in a bank account.

The trial court's findings are supported by substantial competent evidence, and the trial court was not presented with any conflicting evidence. The trial court did not err in quashing the garnishment order.

Affirmed.