No. 45,696

M. P. Yeager, *Appellee*, v. National Cooperative Refinery Association, a corporation, *Appellant*, v. W. R. Yeager, *Appellee*.

(470 P. 2d 797)

Opinion filed June 13, 1970.

*Richard A. Lloyd,* of Jochems, Sargent & Blaes, of Wichita, argued the cause, and *Emmet A. Blaes* and *Bruce W. Zuercher,* of the same firm, were with him on the brief for the appellant.

*William L. Oliver, Jr.,* of Martin, Porter, Pringle, Schell & Fair, of Wichita, argued the cause, and *George B. Collins,* of Collins & Collins, of Wichita, also argued and was with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: In this lawsuit, the plaintiff, M. P. Yeager, who owns an interest in an overriding oil and gas royalty, seeks an accounting from the defendant, National Cooperative Refinery Association, for a share of the oil produced from the Northeast Quarter of Section 5, Township 28 North, Range 1 East, Kay County, Oklahoma. These parties will be referred to hereafter either as plaintiff, or Mrs. Yeager, on the one hand and defendant, or N. C. R. A., on the other. N. C. R. A. has filed a third party petition against W. R. Yeager, the husband of M. P. Yeager, who, as third party defendant, will be referred to throughout the opinion as Yeager or Mr. Yeager.

The case was tried to the court which, after making findings of fact and conclusions of law, entered judgment in favor of Mrs. Yeager against N. C. R. A. ordering an accounting. Judgment was also entered in favor of Mr. Yeager and against N. C. R. A. on the latter's third party petition. The appeal was thereupon undertaken by N. C. R. A.

The facts of the case are somewhat involved. In 1953, Mr. Yeager, an independent Wichita lease broker, discovered an unleased quarter section of land in Kay County, Oklahoma, which he thought was blessed with good oil prospects, since it lay adjacent to production. In checking into the ownership, Yeager found that parties by the name of Dilworth, sometimes referred to herein as the "Dilworth Group", claimed an interest in the mineral rights through a common ancestor who had farmsteaded the quarter section, while other parties, known in this opinion as the Trenarys or the "Trenary Group", also claimed title to the minerals, tracing their ownership through tax sale conveyances made to purchasers at tax foreclosure sales.

Mr. Yeager interested N. C. R. A. in obtaining an oil and gas lease on the property and a verbal understanding was reached that when Yeager had secured a valid lease, N. C. R. A. would take an assignment of the lease from Yeager, paying $500 therefor. The assignment was to be subject to the reservation by Yeager of an overriding royalty of $\frac{1}{16}$ of $\frac{7}{8}$ of all oil and gas produced thereunder. N. C. R. A. also agreed to pay all abstracting expenses.

In an endeavor to obtain good title to the lease, Mr. Yeager contacted both the Dilworth and the Trenary groups and was continuing to negotiate with members of both groups when the defendant advised him that the Dilworths were not necessary parties to the lease and to cease his efforts to lease from them.

In October, 1954, a representative of N. C. R. A., accompanied by the company's attorney, who had rendered a title opinion that title to the minerals was in the Trenary group, journeyed to Newkirk, Oklahoma, where they met with the Trenarys' lawyers and accepted a lease executed by members of the Trenary group, alone. This action was taken unknown to Yeager. The lease which was secured, dated October 13, 1954, was taken in Mr. Yeager's name and was brought back to Wichita where Mr. Yeager, on October 14, 1954, assigned the same to N. C. R. A., reserving $\frac{1}{16}$ of $\frac{7}{8}$ of all oil and gas produced thereunder. On the same date Mr. Yeager assigned a $\frac{1}{4}$ interest in the overriding royalty interest to his wife, who is the plaintiff herein. The other $\frac{1}{4}$ interest in the overriding royalty was assigned to Roy John Evans who is not a party to this lawsuit. Yeager took the lease and accompanying assignments to Newkirk, Oklahoma, where they were recorded on October 19, 1954. We shall hereafter refer to this lease as the Yeager lease.

Subsequently, N. C. R. A. assigned a one-half interest in the lease, subject to the overriding royalty, to Leo H. Fortier and Wayne W. Wright, who were designated as operators of the lease. Six producing oil wells have been drilled on the quarter section involved.

On June 2, 1955, the Dilworths, who were left standing in the cold when the Yeager lease was accepted, and were apparently aggrieved by such neglect, commenced proceedings in the state of Oklahoma challenging the validity of said lease and seeking for themselves a share of the action. In the Oklahoma proceedings, Fortier and Wright, N. C. R. A., Mr. and Mrs. Yeager and Mr. Evans were all joined as parties defendant.

The tortuous route of those legal proceedings over a ten-year span of time need not be traced in too minute detail. It is sufficient for the present to state that the District Court of Kay County, Oklahoma, in which the case was tried, held the Yeager lease to be valid, but on January 12, 1960, the Supreme Court of Oklahoma reversed that decision. In the opinion, reported as *Dilworth v. Fortier*, 354 P. 2d 1091 (Okla.), the supreme court determined that the Trenarys derived no title whatever to the minerals through

the chain of title based on the tax deeds and that the trial court had erred in upholding the Yeager lease so far as it was based on title derived through such deeds.

We need not probe into the basis for this decision other than to say it was predicated on the proposition that the tax sale proceedings, and the tax deeds issued thereunder, conveyed no title to the minerals, for the reason that, under a 1913 lease, the mineral interests in the land had become severed from the fee for tax purposes, and that gross severance taxes were being paid on gas produced therefrom at the time the land was sold for unpaid ad valorem taxes. Neither are we called upon to appraise the rationale of the decision. We need only observe that we are bound thereby so far as the validity of the Yeager lease is concerned.

The Oklahoma decision of January 12, 1960, did not entirely terminate the litigation, however, for the case was remanded for a new trial "not inconsistent with the views expressed herein." On remand, additional hearings were conducted by the Kay County District Court on April 17, 1961, and on June 27, 1961. In those hearings questions of title to the minerals were determined by the trial court, along with other matters. A second appeal was thereupon perfected to the Oklahoma Supreme Court which, on May 12, 1964, handed down a second opinion, *Dilworth v. Fortier*, 405 P. 2d 38 (Okla.).

Finally, on November 3, 1965, this protracted litigation was laid at rest by an order entered by the long suffering trial court dividing, by way of dollars and cents, the oil runs which had accumulated and had been impounded over the years. The division was made between the Dilworth and Trenary groups, a Rose group, a Frates group, (both of which entered the picture during the lawsuit), and the owners of the Yeager lease (N. C. R. A. and Fortier and Wright).

The present action for an accounting was commenced against N. C. R. A. July 20, 1966. As we have already noted, judgment was entered in favor both of Mrs. Yeager and her husband. In its decision, the trial court reserved questions relating to the accounting itself pending determination of the legal issues which are involved in this appeal.

On the present appeal, the defendant, N. C. R. A., advances these arguments: (1) That plaintiff's claim is barred by the statute of limitations; (2) that plaintiff's claim is barred under the doctrine of res judicata; (3) that the defendant was not estopped to deny the validity of the Trenary lease; (4) that defendant was entitled

to rely on the warranty of title contained in Yeager's assignment of the lease; and (5) that defendant's motion for a continuance should have been granted.

We shall first take up the defendant's contention that the plaintiff's claim is barred by the statute of limitations. The argument in this regard is two-fold: First, that the two-year statute of limitations defined in K. S. A. 1969 Supp. 60-513, (formerly G. S. 1949, 60-306, *Third*) is applicable to the plaintiff's cause of action and second, that plaintiff's cause of action accrued when the Yeager lease was determined to be invalid by the Oklahoma Supreme Court on January 12, 1960.

The plaintiff takes a contrary and partially inconsistent view: (1) She first admits, in her brief, that the two-year statute is applicable, but ends up arguing that the doctrine of laches, only, applies, and (2) she maintains that her cause of action did not accrue until the Oklahoma trial court entered a final order of judgment on November 3, 1965, after the case had been remanded a second time. Thus the issues are framed with respect to the statute of limitations.

We infer from the briefs which are presented in this case that Mrs. Yeager predicates her right to recover on the doctrine of equitable estoppel. There is considerable disputation between the parties relating to the concept which underpins that doctrine, and the quality of the conduct needed to invoke it. In our view, much of the debate over whether fraud is required as a basis for equitable estoppel and, if so, whether the fraud need be actual or constructive, only, is of little moment, so far as the statute of limitations question is here concerned. If the cornerstone of Mrs. Yeager's asserted cause of action be fraud, the two-year limitation set out in K. S. A. 1969 Supp. 60-513 (3) would apply. The end result would be the same should her action be one defined in 60-513 (4), which covers by its terms "an action for injury to the rights of another, not arising on contract and not herein enumerated."

In her petition Mrs. Yeager does not designate the nature of her cause of action—she simply asks for an accounting of her share of the oil produced from the land covered by the Yeager lease. That lease, except as to 15 acres in the southwest corner concerning which more will be said later, had been declared void by the Oklahoma Supreme Court and was, accordingly, terminated. Except as to the 15 acres, the lease could no longer form a basis for the recovery of royalty payments due thereunder. (3 Summers,

Oil & Gas, Permanent Edition, § 554, p. 654.) Her ground of recovery, if any, must stem from a different source.

If plaintiff's cause of action does not arise out of fraud, it must surely be said to sound in tortious conduct, that is, the gravamen of her action must then lie in the defendants wrongful interference with Mr. Yeager's legitimate efforts to obtain a valid lease from the requisite lessors. In 52 Am. Jur., Torts, § 26, p. 379, we find this rule stated:

"Where a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of the circumstances surrounding or attending the transaction, the breach of the duty is a tort. . . ."

As we have previously observed, the plaintiff suggests, after first conceding the two-year statute of limitations applies, that in a purely equitable action for an accounting, where there is no corresponding legal right or remedy, the statute of limitations does not apply at all; that the doctrine of laches, alone, will defeat the cause of action. We find no great fault with these assertions as abstract statements of law, but believe they have no application here.

In our view of the circumstances attending the instant case, Mrs. Yeager did have a corresponding legal remedy; she might have sued to recover damages for N. C. R. A's alleged interference with her assignor's efforts to obtain a valid lease. The rule set forth in 30 A C. J. S., Equity, § 131, p. 90, is pertinent:

"Where there is a corresponding legal right or remedy, [as we believe there is here] although equity may have exclusive jurisdiction over the enforcement of the right, courts of equity ordinarily will apply the statute of limitations by analogy . . ."

This rule has become established in the jurisprudence of this state. In *Rex v. Warner*, 183 Kan. 763, 332 P. 572, the subject was considered in some depth, and, on page 769, we said:

"No doctrine of equity jurisprudence is better settled than the rule that in the absence of the existence of a statute of limitations, the time in which a party will be barred from relief in a court of equity must necessarily depend to a certain extent upon the facts of each case as they may arise; but, when the statute has fixed the period of limitations under which the claim, if interposed in a court of law, would be barred, courts of equity by analogy follow the limitations provided by law. (*Bell v. Bank of Whitewater*, 146 Kan. 901, 906, 73 P. 2d 1059; 34 Am. Jur. Limitation of Actions, § 59, p. 55; 53 C. J. S., Limitations of Actions, § 36, p. 987; 30 C. J. S., Equity, § 131, pp 560, 561; 1 Wood on limitations [4th Ed.], 272, 277; Kelly, Code, Statute of Limitations, § 49, p. 54.) . . ."

Neither is the accounting sought by Mrs. Yeager one based upon a mutual running account, that is, one which would remain open until the convenience or agreement of the parties might determine otherwise. Here the items of asserted indebtedness are all on one side; the account does not have the character of an open running account so far as the statute of limitations is concerned. (*Spencer v. Sowers*, 118 Kan. 259, 234 Pac. 972.)

We are forced to conclude that the doctrine of laches has no relevance to the facts in this case, but that the two-year statute of limitations applies. Mrs. Yeager must have commenced this lawsuit within two years from the time her asserted cause of action accrued.

At what point in time did the plaintiff's cause of action accrue? There is sharp disagreement between the parties on this point.

Mrs. Yeager contends her cause of action did not accrue until November 3, 1965, when the Kay County District Court split the money, dividing the thousands of dollars on hand among the Dilworths, the Roses, the Trenarys, and the Frates, with the remainder going to the lessees, largely in recoupment of their development and production costs. The present proceeding, being filed July 20, 1966, was commenced well within two years of that date. On the other hand, N. C. R. A. argues that the cause of action arose when the Oklahoma Supreme Court determined that the Yeager lease was invalid insofar as it covered areas where the Trenarys' title to the minerals was derived only through tax deeds. The date of that decision is shown as January 12, 1960.

There is much to be said for the latter point of view. The basic issue litigated in the first appeal was whether the Yeager lease, executed by the Trenary group, was valid. This issue, in turn, depended on whether the Trenary group had title to the minerals at the time the lease was executed. The 1960 supreme court decision determined that question by holding that the tax deeds, through which the Trenarys claimed title to the minerals, conveyed no title at all to the minerals (except, as it turned out, to a one-half interest in the southwest 15 acres).

It was at this point in time that Mrs. Yeager should first have known that the Yeager lease was, for the most part, invalid. If her royalty interests had been injuriously affected by the defendant's interference with Mr. Yeager's endeavors to obtain a good and valid lease, as she here contends was the case, she should have been aware when the 1960 decision came down of her right to institute

an action such as this against N. C. R. A. In a letter addressed to N. C. R. A. in 1957, Mrs. Yeager's current counsel warned that should the Oklahoma lawsuit be decided adverse to N. C. R. A.'s position and if Mrs. Yeager's royalty interest was not preserved, she would be grievously injured by the company's interference with Yeager's efforts to obtain a lease from the Dilworths.

But even though it be argued that the plaintiff could not tell with certainty what part of the Yeager lease was valid, and what part was void, until a judicial determination was entered with respect to ownership of the minerals, that issue was resolved by the district court of Kay County not later than July 20, 1961, at which time a journal entry was signed and filed reflecting the following entry of judgment respecting title to the various mineral interests: Minerals under the East half of the quarter section covered by the lease were held to be owned by the Frates interest; those under the North 65 acres of the West half were determined to be titled in the Rose and Frates groups; and those in the Southwest 15 acres were decreed to be owned by the Rose and Trenary interests jointly—half and half.

Although an appeal was taken from the judgment of the trial court entered July 20, 1961, no challenge appears to have been directed against the court's determination of the mineral ownerships, as the same are detailed above. While we do not have before us either the notice of appeal or the specification of errors, the opinion of the supreme court clearly discloses that titles to the several mineral interests were not placed in issue on the second appeal, nor were any changes in ownership effected by the appeal.

Judging from the language of the opinion, the issues in the second appeal were (1) the lessees' right to recover development and production costs; (2) the lessors' (Trenarys') right to the landowner's ⅛ royalty and (3) the propriety of appointing a receiver. These were the areas covered by the appeal. In our opinion they were severable and distinct from that part of the judgment which adjudicated title to the minerals. Being separate parts of the judgment, an appeal might be taken from them without including that part of the judgment relating to ownership of the minerals and the validity of the lease itself. The question of appealability is discussed in 4 Am. Jur. 2d, Appeal and Error, § 49, where it is said on pp. 571, 572:

"Statutes in some jurisdictions authorize an appeal from a part only of a judgment, abrogating the common-law rule that a writ of error had the effect of bringing up before the reviewing court, for the examination of errors of law, the entire record, so that it would not lie to review a part only of a judgment. Even in the absence of such specific statutory authorization the same result has been expressly or impliedly reached, and an appeal may be taken from part only of the decision appealed from. For such an appeal from a part of a decision to lie, that part must be severable from the remainder of the decision. . . ."

While we find no authority from this jurisdiction bearing directly on the point, our judgment is that Mrs. Yeager's claim against N. C. R. A. was ripe for filing at least as early as July 20, 1961. Such was the date on which the Kay County District Court rendered its decision, unchallenged by appeal, which determined title to the oil and gas interests. From and after that date we believe she might have maintained an action against N. C. R. A. not only for the alleged wrongful conduct of N. C. R. A. in interfering with Mr. Yeager's efforts to obtain a valid lease, but also for the over-riding royalties which were due her under the lease on the 15 acres. In *Rex v. Warner, supra,* this court stated:

". . . Generally speaking, a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises or when there is a demand capable of present enforcement. (54 C. J. S., Limitations of Actions, § 109, pp. 11, 12.) Stated differently, an obligation must exist upon one party in favor of the other, the performance of which is refused. The true test to determine when a cause of action has accrued is to ascertain the time when plaintiff could first have maintained his action to a successful result. (*Howard v. Ritchie,* 9 Kan. 102; *McBride v. Mortgage Co.,* 44 Kan. 351, 24 Pac. 428; *Railway Co. v. Grain Co.,* 68 Kan. 585, 75 Pac. 1051; *Bruner v. Martin,* 76 Kan. 862, 865, 868, 93 Pac. 165; 3 Hatcher's Kansas Digest [Rev. ed.], Limitation of Actions, § 21.) . . ." (pp. 769, 700.)

We are aware of the authorities cited by Mrs. Yeager in support of her claim that the statute was tolled pending final settlement of the Oklahoma litigation. Examination of the authorities presented will disclose circumstances which distinguish them from the present action. The issue in the Oklahoma litigation was primarily concerned with the validity of the Yeager lease. Once that issue was determined adversely to the interest of both N. C. R. A. and Mrs. Yeager, no reason appears why she was compelled to await further decision of peripheral issues before taking leave of N. C. R. A. and pursuing whatever remedy she may have had against it for injury to her interests.

Nor have we been cited to any authority which might justify us in saying that the plaintiff would be unable to litigate her claim for the share of the overriding royalty payments due her from the southwest 15 acres, until after the receivership was terminated. So far as the record reveals, she had made no claim to any of the funds in the receiver's hands; she sought no share of the cake which was cut on November 3, 1965; and no division of funds as between N. C. R. A. and Mrs. Yeager was attempted or accomplished by the Oklahoma court at that time.

Moreover, there is actually no dispute now between N. C. R. A. and Mrs. Yeager as to her rights under her overriding royalty interest in the 15 acres; N. C. R. A. has seen fit to tender amount due on that account. The real issue in this case revolves around whether the plaintiff is also entitled to the royalty payments she would have received had the Yeager lease been valid in its entirety.

Finally we note the argument that in the Oklahoma litigation N. C. R. A. and Mr. and Mrs. Yeager were all represented by the same counsel. It is obvious however, that Mrs. Yeager had personal counsel as well during that period. This is seen from the communication addressed to N. C. R. A., on her behalf, in 1957. We think that the common representation of Mrs. Yeager and N. C. R. A. during the period when the validity of the lease was still in controversy would constitute no impediment to Mrs. Yeager later disassociating herself and seeking the services of her personal counsel, once her position had become antagonistic to that of N. C. R. A.

We are forced to conclude that plaintiff's recovery is barred by the statute of limitations. Accordingly we find it unnecessary to consider other points of error raised by the defendant.

The judgment of the court below is reversed with directions to enter judgment in favor of the defendant.