986 F.2d 1428
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Laverne REICH, Plaintiff-Appellant,
v.
Lelyn J. BRAUN, Defendant-Appellee.
 No. 92-3137.
 United States Court of Appeals, Tenth Circuit.
 Feb. 11, 1993.
 
 1
 Before STEPHEN H. ANDERSON and EBEL, Circuit Judges, and BRIMMER,* District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 CLARENCE A. BRIMMER, District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument, and plaintiff's request for oral argument is denied.
 
 
 5
 Plaintiff appeals the district court's entry of summary judgment in defendant's favor on the ground that the statute of limitations had expired before this legal malpractice diversity case was filed. Plaintiff claims the district court erred in its determination of when the statute of limitations began to run, and in denying plaintiff's motion to recuse the district court. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.
 
 
 6
 Defendant represented plaintiff in a divorce action beginning in 1981 and concluding in late 1982. According to plaintiff, defendant was negligent when he failed to solicit and obtain a property settlement to include a release of plaintiff's obligation on a debt and deed of trust to the Federal Land Bank of Wichita (bank). According to plaintiff, she had requested defendant procure such a settlement, but he refused to explore settlement. The divorce proceeded to a hearing. The state court judge divided the marital property, granting the subject real estate and its debt to the husband. Plaintiff was not released from the debt on the real estate.
 
 
 7
 In 1986, plaintiff's former husband failed to pay the debt, and on December 11, 1986, the bank filed suit against plaintiff and her former husband. Defendant represented plaintiff for some time in the suit brought by the bank. On July 7, 1987, the state court filed its journal entry of foreclosure, ordering "the plaintiff, Federal Land Bank of Wichita, recover a judgment in personnam [sic] and in rem herein for the sum of $328,052.46 together with interest thereon at the rate of 14.5% per annum ... against the defendants Martin Vann and LaVerne Vann, jointly and severally...." Aplt.App.Doc. N, journal entry of foreclosure, at 2. Following a foreclosure sale conducted on April 25, 1989, the state court denied confirmation of the sale, finding that no deficiency had been adjudicated. Id., order denying confirmation of sale, at 2. Thereafter, on June 7, 1989, a deficiency judgment was entered against plaintiff and her former husband. Plaintiff ultimately paid off the debt to the bank.
 
 
 8
 Plaintiff filed this case on January 5, 1990, alleging legal malpractice. The district court determined the two-year statute of limitations provided in Kan.Stat.Ann. § 60-513(a)(4) began to run on July 7, 1987, the date of the journal entry of foreclosure. Accordingly, the district court held that the limitations period had expired prior to filing suit, and granted defendant's motion for summary judgment.
 
 I. RECUSAL
 
 9
 Plaintiff moved to recuse the district court, pursuant to 28 U.S.C. § 144, alleging a close relationship between the judge and the defendant that necessarily would color the court's judgment in this case. According to plaintiff, the district court's bias in favor of defendant was demonstrated by the court's expression of concern for defendant in view of very serious problems faced by defendant's family. The district court denied the motion.
 
 
 10
 "Because the decision to recuse is within the sound discretion of the district judge, this court reviews the denial of a motion to recuse only for abuse of discretion." Weatherhead v. Globe Int'l, Inc., 832 F.2d 1226, 1227 (10th Cir.1987). The party requesting recusal bears a substantial burden to demonstrate the judge is not impartial. Id. Here, "[t]here is no indication ... that the judge had formed an opinion on the merits on some basis other than what he had learned from his participation in the case." Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir.1987); see also State v. Griffen, 734 P.2d 1089, 1093 (Kan.1987) (in criminal case, recusal based on lack of impartiality required where facts create a reasonable doubt about judge's impartiality, not in judge's mind or even in litigant's mind, but rather in the mind of a reasonable person with knowledge of all circumstances). The judge's "ordinary and natural reaction" to an unfortunate situation involving a party in a case before him does not create grounds for disqualification for bias. See Griffen, 734 P.2d at 1093 (judge not to be disqualified because he reacted as would anyone else to evidence of accused's actions causing natural disgust).
 
 
 11
 We conclude the district court's expression of concern for defendant and his family was a natural reaction to defendant's circumstances. Plaintiff failed to carry her burden of demonstrating the district court was not impartial. Accordingly, we find no abuse of discretion in the district court's denial of the recusal motion.
 
 II. SUMMARY JUDGMENT
 
 12
 We review de novo the grant or denial of summary judgment, applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c). Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate when the material facts are not genuinely disputed and the moving party is entitled to judgment as a matter of law. Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). We will examine the record in the light most favorable to the party opposing the motion. DBLKM Inc. v. Resolution Trust Corp., 969 F.2d 905, 908 (10th Cir.1992). We conduct a de novo review of the district court's determination of state law. Mares v. ConAgra Poultry Co., 971 F.2d 492, 495 (10th Cir.1992).
 
 
 13
 It is undisputed that plaintiff's malpractice action, based on defendant's negligence in failing to secure a property settlement in the divorce, is governed by the two-year statute of limitations provided in Kan.Stat.Ann. § 60-513(a)(4) & (b). We have reviewed the record and considered plaintiff's arguments. For substantially the reasons stated in the district court's memorandum and order dated March 12, 1992, a copy of which is attached, we affirm the summary judgment granted to defendant.
 
 
 14
 The judgment of the United States District Court for the District of Kansas is AFFIRMED.
 
 ATTACHMENT
 
 15
 IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS
 
 
 16
 Laverne Reich, Plaintiff,
 
 
 17
 vs.
 
 
 18
 Lelyn J. Braun, Defendant.
 
 No. 90-1006-K
 
 19
 (March 12, 1992).
 
 MEMORANDUM AND ORDER
 
 20
 This is a legal malpractice action brought by the plaintiff, Laverne Reich, against her former attorney, Lelyn Braun. Reich alleges that Braun negligently failed to negotiate a property settlement in her divorce action which would have relieved her of liability on mortgaged property awarded to her husband. Reich also claims Braun was negligent in failing to obtain a release of liability from the guarantor of a promissory note executed by Reich and her ex-husband as security for the mortgage. As a result of Braun's negligence, Reich claims she was forced to sell mineral interest rights to pay the balance of the promissory note, and as a result, suffered substantial monetary damage. In his defense, Braun asserts that Reich's action is barred by the statute of limitations and therefore is subject to summary judgment.
 
 
 21
 Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must resolve all disputed facts in favor of the party resisting summary judgment. White v. General Motors Corp., Inc., 908 F.2d 669, 670 (10th Cir.1990), cert. denied, 59 U.S.L.W. 3441 (1991). Summary judgment shall be denied if the moving party fails to demonstrate its entitlement beyond a reasonable doubt. Norton v. Liddel, 620 F.2d 1375, 1381 (10th Cir.1980).
 
 
 22
 The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), cert. denied, 484 U.S. 1066 (1988). In resisting a motion for summary judgment, the nonmoving party may not rely upon mere allegations, or denials, contained in its pleadings or briefs. Rather, the party must come forward with specific facts showing the presence of a genuine issue for trial. Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir.1990). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. Celotex, 477 U.S. at 323-24.
 
 
 23
 A hearing on the issue was held on March 9, 1992. The court now makes the following findings of fact and conclusions of law. As more fully explained below, the defendant's motion for summary judgment is hereby granted.
 
 Findings of Fact
 
 24
 The facts of this case are somewhat confusing and require a detailed sequence of events.
 
 
 25
 On May 26, 1976, the plaintiff and her husband, Martin Vann (Vann), executed a promissory note for the sum of $339,000.00, payable to the Federal Land Bank of Wichita (FLB). As security for the note, the Vanns executed a mortgage on 640 acres of real property in Kearny County, Kansas, located at Section 1, Township 25 South, Range 36 West of the Sixth Principal Meridian (1-25-36), together with certain irrigation equipment. The appraised value of the mortgaged real estate was $452,800.00.
 
 
 26
 On June 17, 1981, plaintiff, a resident of Kansas, entered an oral contract with Lelyn Braun, an attorney in Garden City, Kansas, to represent her in a divorce action.[1] The Vanns attempted to reconcile their relationship but ultimately failed, and a final trial was held on October 19, 1982. Plaintiff contends that during this period she repeatedly requested that Braun negotiate a property settlement to the effect that Vann would receive all the marital real estate and accompanying debts, and in return she would accept a cash settlement for her inchoate rights in the marital property. Braun, however, refused or failed to initiate any such settlement, but instead advised plaintiff to seek a court-ordered division of the marital real estate.
 
 
 27
 At the time of the Vanns' divorce and division of property, the mortgaged property, without minerals, had an appraised market value of $528,000.00. Plaintiff has produced evidence to show that if Braun had requested a release from obligation for plaintiff as co-obligor on the promissory note made to the FLB and release from the FLB's mortgage, the FLB more probably than not would have allowed the request as part of a settlement proposal. Braun did not make the request, however, and consequently the court awarded, in part, one-half the mineral interest rights in 1-25-36 to the plaintiff, subject to any indebtedness. Vann was awarded the surface rights to 1-25-36, also subject to any indebtedness. Plaintiff contends that since the division of marital property she believed she was no longer liable on the promissory note held by the FLB.
 
 
 28
 Thereafter, several lawsuits were filed against the plaintiff to recover outstanding debts. Eventually, Braun filed a motion to reopen the divorce and property settlement action to dispose of previously unassessed marital debts. The motion was denied, however, as an improper collateral attack on the evidence presented at trial.
 
 
 29
 On July 1, 1986, Vann failed to make the annual installment payment due on the promissory note executed by himself and the plaintiff in 1976. On October 23, 1986, the FLB exercised its option to accelerate all unmatured portions of the indebtedness and declared all the indebtedness due and payable. The FLB filed an action against Vann and plaintiff Laverne Reich on December 11, 1986, seeking a judgment of $303,900.99 together with interest at the annual rate of 14.5 percent.
 
 
 30
 As plaintiff's attorney, Braun filed an answer and cross-claim in the FLB action. Plaintiff denied that she was in default on the mortgaged real estate because it had been awarded to Vann in the divorce action. In her cross-claim, plaintiff sought judgment against Vann in the event a deficiency judgment was entered against her in favor of the FLB. Plaintiff contends that at the time of preparing the answer in the FLB action, Braun represented to her that she would have no personal liability arising out of the proceedings unless a deficiency judgment was entered against her and a foreclosure sale occurred.
 
 
 31
 A journal entry of foreclosure was entered by the district court on July 7, 1987. Judgment was granted in favor of the FLB and against plaintiff and Vann, jointly and severally, in the amount of $328,052.46 together with interest at 14.5 percent. The mortgaged real estate, excluding plaintiff's undivided one-half mineral interest, was sold to the FLB for $250,000.00. Thereafter, several writs of execution were issued to attach Vann's property.
 
 
 32
 There is no record of Braun's formal withdrawal as plaintiff's counsel in the FLB case. Nor is there any record of entry of appearance by any other counsel. However, from the records provided to this court it appears that Robert Frederick was acting as plaintiff's counsel by June 16, 1988.
 
 
 33
 On May 3, 1989, the district court denied a confirmation of sale of Vann's property. The court determined that no deficiency judgment had been entered prior to any of the execution sales and that no deficiency judgment had ever been judicially determined. On June 7, 1989, a deficiency judgment was entered in favor of the FLB for $67,387.34 with interest at 14.5 percent.
 
 
 34
 In the meantime, the FLB entered a partial release of the judgment lien on plaintiff's one-half mineral interest, although plaintiff was not discharged from personal liability. Thereafter, plaintiff sold her one-half interest in the mineral rights of the mortgaged property and applied the proceeds of the sale to the FLB debt on May 10, 1989. Plaintiff made several more payments to the FLB and eventually paid the balance due on March 19, 1991.
 
 Conclusions of Law
 
 35
 Plaintiff filed this legal malpractice action against her former attorney, Lelyn Braun, on January 5, 1990. Plaintiff alleges that she has suffered substantial monetary damage due to Braun's failure to negotiate a property settlement in her divorce action which would have released her as co-obligor on the promissory note to the FLB and released her undivided one-half mineral interest from the mortgage. She claims that Braun negligently failed to explain the true nature of her legal relationship with the FLB and did not advise her that she would remain liable on the underlying promissory note if the FLB ever sought a deficiency judgment after a foreclosure of the secured real property. Plaintiff alleges that Braun's negligence continued after the divorce action because he continued to represent to her that she would not be held personally liable on the promissory note. Finally, plaintiff claims she did not suffer substantial injury until May 10, 1989, when she was forced to sell mineral interest rights and apply the proceeds to the balance due on the promissory note.
 
 
 36
 Braun contends this action is barred by the statute of limitations. He argues the statute of limitations commenced running when the alleged negligent act occurred, sometime between June 17, 1981 and October 19, 1982. Thus, the alleged act of negligence did not occur within two years of plaintiff's malpractice suit and is barred by the statute of limitations.
 
 
 37
 Plaintiff's malpractice action, based upon the alleged negligence of Braun in failing to obtain a release of liability for her as co-obligor on a promissory note to the FLB, is governed by the two-year statute of limitations provided in K.S.A.1990 Supp. 60-513(a)(4). K.S.A.1990 Supp. 60-513(b) provides that a cause of action based upon a tort accrues when:
 
 
 38
 "[T]he act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, ..."
 
 
 39
 The language of K.S.A.1990 Supp. 60-513(b) establishes that the statute of limitations in a tort liability cause of action accrues when substantial injury occurs or when substantial injury is reasonably ascertainable after the negligent act. General principles have evolved, however, to aid in the application of the statute to particular facts and circumstances. In general, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises. The true test to determine when an action accrues is that point in time at which the plaintiff could first have filed and prosecuted his action to a successful conclusion. Johnston v. Farmers Alliance Mutual Ins. Co., 218 Kan. 543, 548, 545 P.2d 312 (1976); Yeager v. National Cooperative Refinery Ass'n, 205 Kan. 504, 470 P.2d 797 (1970).
 
 
 40
 In Pancake House, Inc. v. Redmond, 239 Kan. 83, 716 P.2d 83 (1986), the Kansas Supreme Court set out four theories which could apply to attorney malpractice suits and the commencement of the statute of limitations.
 
 
 41
 (1) The occurrence rule--the statute begins to run at the occurrence of the lawyer's negligent act or omission.
 
 
 42
 (2) The damage rule--the client does not accrue a cause of action for malpractice until he suffers appreciable harm or actual damage as a consequence of his lawyer's conduct.
 
 
 43
 (3) The discovery rule--the statute does not begin to run until the client discovers, or reasonably should have discovered, the material facts essential to his cause of action against the attorney.
 
 
 44
 (4) The continuous representation rule--the client's cause of action does not accrue until the attorney-client relationship is terminated.
 
 
 45
 Pancake House, 239 Kan. at 87.
 
 
 46
 In the present action, Braun asserts the statute of limitations began to run when the alleged acts of negligence occurred, that is, no later than December 7, 1982, when the property settlement between plaintiff and her husband was journalized. Plaintiff, on the other hand, argues that she did not actually incur damages until May 10, 1989, when she was forced to sell mineral interest rights to pay the balance due on the promissory note to the FLB. In any event, plaintiff argues she could not have legally maintained an action against Braun and have been successful until June 7, 1989, when a deficiency judgment was granted to the FLB.
 
 
 47
 Braun's alleged negligent acts occurred sometime between June 17, 1981, and December 7, 1982. At that time plaintiff suffered some injury because she did not get the requested property settlement which would have granted Vann the marital real estate along with its accompanying debts. Nor did she acquire a release from liability on the promissory note, although Vann was awarded the surface rights of mortgaged property and plaintiff retained only a one-half interest in the mineral rights. Plaintiff's action against Braun did not accrue at the time of the alleged negligent acts, however, because she did not sustain an actionable injury at that time. If Vann had satisfied the obligations under the promissory note to the FLB, plaintiff would not have suffered any injury even though Braun negligently allowed plaintiff to remain a co-obligor on the promissory note. Thus, since plaintiff did not suffer substantial injury when the alleged negligent act occurred, the statute of limitations did not commence at that time.
 
 
 48
 The issue then is when plaintiff knew or should have known that she sustained an injury as the result of Braun's malpractice. In a legal malpractice action, the statute of limitations does not necessarily begin to run with the plaintiff's knowledge of an injury; rather, the action accrues when the plaintiff reasonably ascertains that the fact of the injury is the result of the attorney's past negligence. Dearborn Animal Clinic, P.A. v. Wilson, 248 Kan. 257, 270, 806 P.2d 997 (1991).
 
 
 49
 In Dearborn, the plaintiff suffered injury when it incurred legal expenses and was forced to bring suit against a party it had contracted with. When Dearborn sued in the underlying action to enforce its contract, it believed it had a contract with the defendant which contained a mandatory stock purchase provision. Id. at 266. Therefore, Dearborn's legal malpractice cause of action did not commence at that time because it did not know that its injury was the result of its attorney's negligent preparation of the contract. Id. The legal malpractice cause of action accrued at a later date, when it was evident to the plaintiff that its attorney had negligently prepared an option contract rather than a mandatory purchase contract, but before the underlying action was finally determined. Id. at 271.
 
 
 50
 The facts in this case are distinguishable from Dearborn. In the instant action, it was reasonably ascertainable on December 11, 1986, when the FLB filed suit and sought judgment against the plaintiff and Vann, that plaintiff's injury was the result of Braun's negligence. At that time, plaintiff should have taken notice that her potential liability was the result of Braun's negligence. Nevertheless, that statute of limitations did not begin to run at that date due to Braun's continued representations to the plaintiff that she was not personally liable on the promissory note issued to the FLB. Braun's acts of answering the FLB petition and denying liability, along with the filing of a cross-claim against Vann, lulled the plaintiff into believing she would not suffer damage as a result of the foreclosure action. There is no doubt, however, that on July 7, 1987, when a journal entry of foreclosure was entered against the plaintiff and Vann, jointly and severally, that plaintiff had notice she was liable for the debt. At no time following the journal entry of foreclosure was plaintiff's liability an issue of serious dispute. Therefore, plaintiff should have known that her injury was the result of Braun's failure to obtain a release of liability during the divorce proceeding. In any event, the foreclosure judgment entered on July 7, 1987 gave plaintiff notice to investigate the cause of her liability on the promissory note. Thus, the fact and cause of injury was reasonably ascertainable on July 7, 1987, at which time plaintiff's legal malpractice cause of action accrued and the statute of limitations began to run.
 
 
 51
 Plaintiff argues that the only property foreclosed upon in the underlying action belonged to her former husband, and therefore did not provide notice of her liability. In addition, she argues that no deficiency judgment was entered against her until June 7, 1989, and it was not until this time that she had knowledge of the actual damage sustained.
 
 
 52
 As a general rule, the statute of limitations does not begin to run until the underlying litigation is finally determined. Pizel v. Zuspann, 247 Kan. 54, 77, 795 P.2d 42 (1990). However, if it is clear that the plaintiff in a potential legal malpractice action has incurred an injury, and if it is reasonably ascertainable that such injury was the result of the attorney's negligence, then the statute of limitations begins to run at the time that it was reasonably ascertainable that the injury was caused by the attorney's malpractice even though the underlying action may not have been finally determined. Dearborn, 248 Kan. at 270.
 
 
 53
 As the court explained above, plaintiff had notice of substantial injury attributable to Braun's negligence when a judgment of foreclosure was entered against her in the underlying action by the FLB. At that time, it was clear the only reason for plaintiff's liability was Braun's negligence in failing to obtain a release for her on the promissory note previously issued to the FLB. Therefore, on July 7, 1987, plaintiff could legally have filed suit against Braun and prosecuted her legal malpractice action to a successful conclusion. Thus, her cause of action against Braun accrued on that date and the statute of limitations began to run. Plaintiff's suit was filed January 5, 1990, more than two years after the cause of action accrued and, therefore, is barred by the statute of limitations.
 
 
 54
 IT IS THEREFORE ORDERED this 12 day of March, 1992, that defendant Lelyn Braun's motion for summary judgment (Dkt. No. 17) is hereby granted.
 
 
 55
 /s/ Patrick F. Kelly
 
 PATRICK F. KELLY, CHIEF JUDGE
 
 
 *
 Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 As this court has previously determined, Braun was a resident of Colorado on January 5, 1990, when plaintiff's legal malpractice action was instituted against Braun. Subject matter jurisdiction, therefore, is conferred upon this court pursuant to 28 U.S.C. § 1332. (Dkt. No. 6)